**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW YORK**

**CARMEN APPLEWHITE AND JAMILLAH SALAHUDDIN,**

                        **Plaintiffs,**

          **-against-**

**NEW YORK CITY DEPARTMENT OF EDUCATION; RICHARD CARRANZA, FORMER CHANCELLOR OF NYCDOE; KRISTINA BEECHER, PRINCIPAL OF PS 3 WITHIN DISTRICT 13; THOMAS MCBRYDE, SUPERINTENDENT OF DISTRICT 19; RONALD JAMES, PRINCIPAL OF PS 202 IN DISTRICT 19; TIFFANY RICHARDS, ASSISTANT PRINCIPAL OF PS 202 IN DISTRICT 19;**

                        **Defendants.**

**COMPLAINT**

**ECF CASE**

**21 Civ. ___ (   ).**

**JURY TRIAL DEMANDED**

Plaintiffs CARMEN APPLEWHITE and JAMILLAH SALAHUDDIN, by their attorneys, GLASS HARLOW & HOGROGIAN LLP, as and for their joint Complaint against Defendants, respectfully allege as follows:

### PRELIMINARY STATEMENT

1.      Plaintiffs jointly bring this action seeking monetary and equitable relief based upon Defendants' violations of their rights under 42 U.S.C. Section 1983 under the First Amendment, Title VII (based on religion), the Americans with Disabilities Act (ADA), the Rehabilitation Act, New York State Civil Service Law Section 75-b, and state and city discrimination and antiretaliation laws.

2.      Plaintiffs seek economic, compensatory damages, and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal, state, and city law.

1

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

4.      This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because Plaintiffs are employed as teachers for the NYCDOE in Brooklyn, New York.

5.      This Court has the authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      This Court has supplemental jurisdiction over Plaintiffs' state and city law claims under 28 U.S.C. § 1367(a).

**PARTIES**

7.      Plaintiff Applewhite is a resident of the County of Kings and the State of New York.

8.      Plaintiff Salahuddin is a resident of the County of Kings and the State of New York.

9.      At all times relevant herein, Plaintiffs were "public employees" of Defendant New York City Department of Education (NYCDOE) within the meaning of New York State Civil Service Law § 75-b(1)(b).

10.     At all times relevant herein, Defendant Kristina Beecher is the principal for PS 3 within District 13 in Brooklyn.  She is sued in both her official and individual capacity.

11.     At all times relevant herein, Defendant Thomas McBryde is the Community School District Superintendent within District 19 in Brooklyn.  He is sued in both his official and individual capacity.

12.     At all times relevant herein, Defendant Ronald James is the principal of PS 202 within District 19 in Brooklyn. He is sued in both his official and individual capacity.

13.     At all times relevant herein, Defendant Tiffany Richards is an Assistant Principal of PS 202 within District 19 in Brooklyn.   She is sued in both her official and individual capacity.

## STATEMENT OF FACTS

### CARMEN APPLEWHITE

14.     Plaintiff Dr. Carmen Applewhite is currently employed at P.S. 3, The Bedford Village School, located in District 13 of Brooklyn. She has been employed by the New York City Board of Education, now referred to as  New York City Department of Education ("NYCDOE") since 1998 as a special education teacher.  Dr. Applewhite began her teaching career at PS 243 in the Chancellor's District 85 as a provisionally certified teacher.  In the fall of 1999,  she was reassigned  to MS 143 in District 16 where she also became an elected union representative.  Dr. Applewhite was subsequently transferred to  PS 304  in  District 16 of  Brooklyn where she served in  the  capacity  of  a  Resource  Room  Teacher  and  UFT  Chapter  Leader  from  2000-2008.   In September 2008, Dr. Applewhite was placed in the Absent Teacher Reserve (ATR) pool after she was removed from her teaching position as a SETSS Teacher, excessed from PS 304, and received an Unsatisfactory annual rating in retaliation for advocating for the rights of special education students.  Dr. Applewhite then was voluntarily transferred to PS 3 in District 13 to escape further maltreatment from District 16 school administrators.

15.     In the 2009-2010 school year, Dr. Applewhite organized and co-founded the Coalition for Public Education, a community grassroots organization of NYCDOE employees and members of other organized labor unions to advocate against Mayoral control of the school system and maltreatment of NYCDOE employees by school administrators.  Dr. Applewhite was very visible publicly criticizing NYCDOE policies and practices that violated the rights of parents, teachers and students. Based on her public statements, Dr. Applewhite was interviewed by many prominent news outlets and featured in many articles from 2008 until the present.

16.     Dr. Applewhite was elected a UFT chapter leader at PS 143 in District 16 in the 1999-2000 school year.  She also was elected UFT Chapter Leader at PS 304 and served from 2000-2008.  Then, in October 2008, she was reassigned to District 13 and placed in a permanent position at PS 3.  In the course of two years at the school, she was nominated and elected by her peers to serve as a UFT Chapter Leader in District 13 for three consecutive terms.

17.     Dr. Applewhite continued to successfully serve as a UFT chapter leader since the 1999 school year, advocating for teacher rights to a safe and healthy work environment and student rights to receive a free appropriate education under the provisions set forth in New York State Education Law and federal statutes for students with special needs.  Dr. Applewhite's dedicated service as a union representative and her full immersion in employee advocacy over the years has caused her to be retaliated against by school district officials and school level administrators at various schools throughout her career.  She has a proven city-wide track record of successfully advocating for teachers, parents and students in her capacity as a UFT Chapter Leader from 1999 until May 2019.  She is the recipient of the UFT Trachtenberg Award for UFT chapter leader community activism in 2008 and served as a Unity caucus Delegate to the former UFT President and current AFT President Randi Weingarten.

18.     Dr. Applewhite received an unwarranted Ineffective annual rating for the 2007-2008 school year within District 16, which she successfully overturned in Court through an Article 78 proceeding.  Dr. Applewhite voluntarily transferred to District 13 in October 2008 as an ATR special education teacher. She received the reassignment to PS 3 after contacting the Director of Human Resources Mr. Bernard Palmer. Dr. Applewhite was forced to request a transfer from her district to escape continued harassment, maltreatment, and denial of her due process rights by not being hired for other positions within District 16.

19.     Dr. Applewhite received Satisfactory and Effective ratings every year from the 2009-2010 school year until June 2017, when she was falsely given an Ineffective rating for the

2017-2018 school year. She was elected UFT Chapter Leader in the 2009-2010 school year and served as an elected union official in PS 3 until May 2019, at which point the UFT removed her as a chapter leader after she reported the UFT District Representative Mary Wade for misconduct and misrepresentation. Dr. Applewhite made several complaints regarding the misconduct of UFT District Representative Wade between 2012-2019 school terms for violating her due process rights as a UFT official, and as a member of the UFT.

20.     Beginning in the 2014-2015 school year, Dr. Applewhite was targeted by PS 3 Principal Kristina Beecher because she was engaging in protected activity when representing staff members in her official capacity as UFT Chapter Leader. For instance, Dr. Applewhite reported contractual violations and health and safety concerns to union officials, such as UFT President Michael Mulgrew and New York City Department of Education Chancellor Carmen Farina and her predecessor Chancellor Dennis Walcott, as well as the District 13 Superintendent. During the course of the 2014-2015 school year, Principal Beecher started to harass Dr. Applewhite due to her status as a UFT chapter leader by, *inter alia,* switching students in her class, trying to excess her from the building, not giving her curriculum materials, and giving her poorly rated observations. Dr. Applewhite still was rated Effective overall for that year.

21.     In the 2015-2016 school year, Dr. Applewhite started to file APPR grievances challenging observation reports issued to her. She filed special education complaints with the UFT, and went on several radio stations and cable networks about corruption in the school system as well as at her school and other schools city-wide. She was rated Effective overall for the 2015-16 school year.

**2016-2017 School Year**

22.     In the 2016-2017 school year, Principal Beecher assigned students to Dr. Applewhite's 2nd, 3rd and 4th grade special education bridge class, who were extremely disruptive to her class. She filed APPR grievances for herself and others at the school. Dr. Applewhite won

at least three APPR arbitrations against Principal Beecher regarding wrongly rated observations through the UFT grievance process, in which Principal Beecher was ordered to change ratings given on individual observations. This decision was ordered by arbitrators for the observations to be removed from Dr. Applewhite's file; however, Principal Beecher failed or refused to remove these observations from her file.

23.     On March 15, 2017, Dr. Applewhite filed an Article 23 special harassment complaint with the UFT and the DOE, as well as a special education complaint advocating for the special education students enrolled in her class with the DOE. The DOE office of labor relations representative eventually ruled in favor of DOE on the special harassment complaint, discounting misconduct of Principal Beecher which Dr. Applewhite reported in her complaint as the basis of harassment, and the UFT failed to appeal it further.

**2017-2018 School Year**

24.     In the 2017-2018 school year, Dr. Applewhite appeared several times on public radio advocating for special education students and being critical of the NYCDOE, including on the radio stations WBLS and WLIB. She filed numerous grievances during the 2017-2018 school year that addressed the mismanagement of funding for school supplies and lack of services being provided for students with special needs.

25.     Specifically, on November 22, 2017, Dr. Applewhite filed a grievance for the teachers in her school in her capacity as a UFT Chapter Leader, regarding Principal Beecher mandating lesson plan format and a lack of instructional material for teachers. In retaliation for Dr. Applewhite filing this grievance, Principal Beecher observed Dr. Applewhite on November 29, 2017, and gave her Ineffective ratings on all components of the observation report given to her in January 2018.

26.     On April 16, 2018, Principal Beecher was ordered by an Arbitrator to remove a derogatory observation dated October 24, 2017, from Dr. Applewhite's Advance Rating file, in

which she was rated Ineffective based on Principal Beecher's observation of a Paraprofessional in her class.

27.     On April 17, 2018, Dr. Applewhite filed a formal Article 23 complaint for harassment and hostile work environment with the UFT and the NYCDOE Office of Labor Relations.

28.     On May 30, 2018, Principal Beecher gave Dr. Applewhite a negative rating and rated her ineffective in all components of an observation report she received on June 21, 2018, after Dr. Applewhite won an arbitration ruling against Principal Beecher to have another observation thrown out for procedural violations.

29.     On May 14, 2018, Dr. Applewhite was interviewed by the Special Commissioner of Investigation regarding the allegations that were filed against Principal Beecher in regard to her violation of City and State statutes for not reporting incidents in the school that were a safety threat to children.

30.     On June 11, 2018, Dr. Applewhite filed a grievance with the District Superintendent regarding reorganization in which Principal Beecher refused to give her a program preference for the upcoming 2018-19 school year. After Dr. Applewhite contacted her Superintendent about the denial of preference reorganization grievance, Principal Beecher went into the Advance rating system and changed the rating on all components for her May 30, 2018 observation from Effective to Ineffective overall on a report dated June 21, 2018, after previously telling Dr. Applewhite verbally that the observation was Effective.

31.     On June 19, 2018, Principal Beecher held a meeting with Dr. Applewhite and UFT District Representative Mary Wade and reiterated her refusal to give her requested grade level program preference for the September 2018-June 2019 school term, and previously publicly humiliated her in front of teachers with less seniority by informing her she was not going to give Dr. Applewhite any of the choices because, according to Principal Beecher, Dr. Applewhite cannot

move her students. Dr. Applewhite filed a formal grievance with the Superintendent's office about this denial of her preference.

32.     On June 25, 2018, Dr. Applewhite received an Ineffective annual rating from Principal Beecher for the 2017-18 school year.  This rating was based on three false observation reports subsequently removed by arbitrators in APPR arbitrations, and this poor rating was in retaliation for these APPR appeals, NYSED complaints, and the newspaper articles she filed against Principal Beecher. Dr. Applewhite also filed numerous grievances for other teachers in the 2017-2018 school year.

33.     On June 26, 2018, the last day of the 2017-2018 school year, Principal Beecher gave Dr. Applewhite a series of disciplinary letters.  In the first letter dated June 25, 2018, Dr. Applewhite was informed that she would be docked pay because she was late to work on May 14, 2018, even though she had sufficient time in her cumulative absence reserve (C.A.R.) Bank. The second letter, dated June 26, 2018, referenced a meeting on May 16, 2018 with Principal Beecher and UFT District Representative Mary Wade, in which Principal Beecher tried to censor Dr. Applewhite from performing her duties as a UFT Chapter Leader.  Principal Beecher questioned her about a confidential conversation she had with a member related to the teacher's program preference. Principal Beecher threatened Dr. Applewhite and told her not to talk to staff members about member contractual concerns without consulting Principal Beecher first. This was a violation of Article 2, 20, 21 and 22 of the UFT-DOE contract and can be construed as an act of intimidation and retaliation because Dr. Applewhite was conferring with the member in a protected activity based on her position as the elected UFT Chapter Leader.  Principal Beecher gave Dr. Applewhite a third letter, dated June 25, 2018, denying two grievances she filed in relation to her program preference for the upcoming school year 2018-2019.

**2018-2019 School Year**

34.  On September 18, 2018,  Dr. Applewhite sent a letter to then DOE Chancellor Carranza informing him of the hostile work environment and asking for him to intervene and provide her with relief from the abusive behavior of  Principal  Beecher.

35.  In September 2018, Dr. Applewhite filed an online NYSED complaint against Principal Beecher about special education abuses.

36.  On November 2, 2018, Dr. Applewhite contacted the New York City Office of the Special Commissioner of Investigations (SCI) to report that she had received an adverse personnel rating for reporting the misconduct of Principal Beecher, and was seeking Whistleblower Protection under New York City Administrative Code 12-113 known as the Whistleblower law.  Dr. Applewhite also contacted several regulatory agencies for the City of New York, including Letitia James, NYC Public Advocate; Mark Treyger, City Council Education Chair; Richard Condon, SCI Commissioner; the New York State Commissioner of Education; and Scott Stringer, New York City Comptroller, to report the misconduct.

37.  On November 14, 2018, during a Parent Teacher Conference, Dr. Applewhite advised a parent of her rights to a free and appropriate education for her child after the parent complained to her that she was never informed that her daughter was placed in a 12:1:1 class.  On November 16, 2018, in an act of intimidation and retaliation for informing the parent of her rights, Principal Beecher summoned Dr. Applewhite to her office with the Individualized Education Program (**"IEP"**) Teacher present to inform Dr. Applewhite that she did not know how to read an IEP.  The following day, on November 20, 2018, upon Dr. Applewhite's arrival at work, she was verbally assaulted in the hallway by a Paraprofessional with pledged allegiance to Principal Beecher. The paraprofessional attempted to make a scene to humiliate her.  Principal Beecher sat in earshot of the onslaught against Dr. Applewhite and did nothing to intervene or stop the paraprofessional's tirade.

38. On November 16, 2018, Dr. Applewhite appeared in an article in the *New York Chief Leader* newspaper and discussed what was happening to her in the school and how she was being retaliated against. Dr. Applewhite publicly spoke about her rating and how the Danielson Rubric and NYS Teacher evaluation system was being used as a tool to harass teachers and make them fearful of losing their careers and livelihood. During the interview, Dr. Applewhite also produced outdated instructional books, materials, and computers being given to her by her school administration, proving that claims filed in her grievances were legitimate. In the *Chief-Leader* newspaper article, Dr. Applewhite stated that she was being harassed based on her position of UFT Chapter leader and that the harassment escalated because she was reelected by her peers to serve for a subsequent term.

39. On November 18, 2018, Dr. Applewhite was a guest speaker on a popular radio show that aired nationwide, overseas, and within the tri-state area in which she continued to speak out against being marginalized, harassed, and subjected to a hostile work environment at the DOE.

40. On November 19, 2018, during a staff meeting for Professional Staff Development, Principal Beecher berated Dr. Applewhite publicly because she informed Principal Beecher that she was violating the contractual rights of teachers by keeping them past 4 p.m. during the school day.

41. On November 21, 2018, Dr. Applewhite went to an arbitration hearing for the first APPR grievance challenging an October 2017 observation, in which Principal Beecher had to attend. In retaliation, on November 26, 2018, Dr. Applewhite received a 48-hour disciplinary notice summoning her to a meeting with Principal Beecher. On November 27, 2018 during the meeting, Principal Beecher informed Dr. Applewhite that on December 4, 2018, her entire class was going to be reconfigured, resulting in her program assignment and student population being changed for the 2018-2019 school year.

42.     The multi-aged student population being assigned to the class had severe behavioral challenges and were considered by school administration to be the lowest performing students in tested grades. The students in questions had severe cognitive delays that would result in low test scores. The illegal reorganization of Dr. Applewhite's class was an arbitrary, capricious, and deliberate act of retaliation.  Principal Beecher had full knowledge that such a reorganization would  negatively impact Dr. Applewhite's rating since it was being implemented two weeks before state exams were going to be administered.  Principal Beecher also had knowledge that Dr. Applewhite was being observed by a state peer evaluator for Grade 2.  Based on the fraudulent misrepresentation of the class configuration, Dr. Applewhite suffered a negative rating by the State's Peer Evaluator, who proceeded to rate her on components that had no relevance to the original Ineffective rating issued by Principal Beecher.

43.     On November 27, 2018, Dr. Applewhite won an Arbitration ruling stating that Principal Beecher had to remove her observation dated May 30, 2018 from the advance rating system after Principal Beecher had refused to remove it.

44.     Dr. Applewhite filed an appeal of the end of year 2017-2018 rating in October 2018 with the DOE Office of Appeals and Review.

45.     On January 26, 2019,  Dr. Applewhite filed a formal Special Education Complaint with the New York State Education Department ("NYSED").  In retaliation, Principal Beecher observed her and gave her an ineffective rating on an observation conducted on January 30, 2019.

46.     On February 11, 2019, an arbitrator issued an additional ruling regarding the May 30, 2018 observation, ordering Principal Beecher and the NYCDOE to recalculate her overall rating for the 2017-2018 school term. The NYCDOE and Principal Beecher failed to comply with the Arbitrator's ruling and used the observations that were supposed to be removed based on her appeal decision, which subsequently resulted in the Ineffective rating being falsely sustained on April 12, 2019.

47.     In February 2019, NYSED eventually substantiated part of Dr. Applewhite's special education complaints alleged in the NYSED complaint she filed in September 2018.

48.     On April 16, 2019, NYSED gave NYCDOE a seven count Citation substantiating 7 out of 11 allegations Dr. Applewhite reported related to violation of New York State education laws 200.6 (a)(2), 200.4(e)(7), 200.6 (f)(3), 200.6 (g)(2), regarding testing modules, ICT teacher services, SETTS services, ESL services, among other things.

49.     On May 5, 2019, Dr. Applewhite eventually was removed from being the UFT chapter leader by UFT leadership, including by UFT District Representative Mary Wade and UFT Borough Representative Elizabeth Perez, after she reported union officials' misconduct in the handling of grievances she filed against Principal Beecher at PS 3 and continued violation of her due process rights as a UFT member and union official. Dr. Applewhite wrote an email to UFT President Michael Mulgrew about the mishandling of her appeal hearing and the misrepresentation she received in terms of her Article 23 special Harassment Complaint. Dr. Applewhite denounced the decision and wrote a scathing rebuttal regarding the NYCDOE Representative's biased decision since he chose to ignore the factual information presented to him specifically regarding health and safety violations at PS 3 and violations of special education federal mandates to the Superintendent, Chancellor, and NYSED.


**JAMILLAH SALAHUDDIN**

50.     Plaintiff Salahuddin began her employment with New York City Board of Education (now NYCDOE) in 1990 as a substitute paraprofessional for Community School District 75 assisting special education teachers with special needs students in various schools. In 1991, Ms. Salahuddin applied for a teaching certificate and became a substitute teacher teaching in different community school districts for two years. In September 1992, she was nominated and worked at PS 137 teaching grades pre-kindergarten ("Pre-K"), three, four, and reading, in District

23. Ms. Salahuddin also voluntarily tutored students for free on Saturdays at the Brooklyn Public Library. In February 1998, Ms. Salahuddin transferred to PS/IS 35 as a staff developer, reading specialist, and testing coordinator, in District 16.

51. In September 2004, Ms. Salahuddin transferred to PS 202 where she has served in different positions, in District 19 in Brooklyn. She has taught grades 3k, Pre-K, K, 1, and 5th grade. Furthermore, she was a SAVE Room Teacher at the school.

52. Ms. Salahuddin is of Muslim creed/religion, and suffers from a disability related to an arthritic knee condition exacerbated due to an injury, and a stress/anxiety disability.

53. From September 2004 until June 2017, she received Satisfactory and Effective ratings each year under several different principals.

54. Ms. Salahuddin has engaged in advocacy on behalf of teachers, including raising issues of mayoral control and criticism of DOE Chancellors, by making statements in newspapers and organizing protests against the District and DOE.

**2017-18 School Year**

55. During the 2017-2018 school year, Ms. Salahuddin was elected as the UFT delegate at PS 202. She was UFT delegate from 2012 to 2018 for two consecutive three-year terms. She ran for UFT chapter leader in May 2018.

56. Ms. Salahuddin was assigned to teach first grade for the 2017-2018 school year.

57. On or about September 11, 2017, Ms. Salahuddin requested teachers' guides, including additional staffing, classroom materials, technology, and books, from the school administration.

58. On September 14, 2017, AP Natasha Radix came in to observe her classroom and gave her positive feedback on a written snapshot later that day including positive "grows" and "glows".

59.     From October 2017 to June 2018, parents, students, and teachers complained to Principal James, AP Radix, AP Vosges, the UFT Chapter Leader, and Ms. Salahuddin as the UFT delegate, about special education noncompliance, behavioral/health/mental services, safety issues, and lack of technology and resources at the school.

60.     In early October 2017, Ms. Salahuddin filed multiple incident reports with Dean Stuart Daniels about safety issues at the school concerning her students.  Her complaints went unaddressed.

61.     On November 20, 2017, Ms. Salahuddin sent a rebuttal to AP Vosges and AP Radix protesting an observation she received, dated October 25, 2017, depicting unsafe behaviors of four students, and reporting the needs of special education services, resources, technology, books, staffing, anti-bullying resources, and curriculum.

62.     On the same day, AP Radix summoned Ms. Salahuddin to sit in a special education class during 7th period and after school to emulate her behavior modification system, with two paraprofessionals, twelve students, resources, technology, and support from administration. On December 18, 2017, Principal James called Ms. Salahuddin to his office for a "plenary" meeting to discuss letters she had sent to UFT President Michael Mulgrew and former Chancellor Farina. At this meeting, Principal James promised her technology, books, resources, special education services, and the removal of one student from her class.  Ms. Salahuddin's letter complained about the lack of special education services, mental and behavioral health services, resources, supplies, anti-bullying curriculum, staffing, ICT class formation, and technology for her class.

63.     On December 20, 2017, at an emergency School Leadership Team ("SLT") meeting to appoint Principal James as principal of the school, Ms. Salahuddin informed Superintendent Thomas McBryde in person about the escalating incidents at the school and the dire need of services and resources for students with special needs, behavioral health issues, and

mental disabilities. Superintendent McBryde heard the commotion from her classroom, with two assistant principals and one dean monitoring her class while she was at the SLT meeting in the library.

64.     In December 2017, Ms. Salahuddin verbally reported that AP Radix and AP Vosges committed corporal punishment towards students to Principal James on separate occasions in writing.   Ms. Salahuddin received no response from Principal James regarding these reports against the APs.

65.     On January 17, 2018, Ms. Salahuddin spoke in front of a public District 19 Community Education Council ("CEC") meeting and reported issues at her school, including that she was not getting assistance at the school for her special education students and her students who were bullied by other students.

66.     In retaliation for speaking up at this CEC meeting, Principal James gave her a poorly rated observation report dated January 31, 2018.   She also received three disciplinary notices on the same day on January 31, 2018.

67.     On February 1, 2018, Assistant Principal Richards entered Ms. Salahuddin's classroom to do a cell phone recording of her class without her consent.

68.     On February 2, 2018, Ms. Salahuddin contacted Chancellor Farina by email reporting misconduct of Principal James and his administration.   Chancellor Farina did not respond to the letter.

69.     On or about February 7, 2018, Principal James pulled 5 students out of her class to question them and accused her of saying things in Arabic to the students, accusing her of imposing her religious beliefs on them.  Principal James later used this accusation to create a false record and to send Ms. Salahuddin for an involuntary medical competency evaluation with DOE Medical, eventually scheduled for April 11, 2018.  She eventually was cleared by DOE Medical

psychologist Dr. Garner on April 11, 2018. Principal James summoned her Arabic students and two other Muslims in third grade to interrogate them during this period.

70.     On February 8, 2018, school reading coaches Ms. Murat and Ms. Johnson, as well as AP Radix, observed Ms. Salahuddin for guided reading, fully aware it was the anniversary of her son's death.

71.     On February 9, 2018, Principal James requested anecdotal records from four of Ms. Salahuddin's special needs students who were not getting their mandated services. Principal James falsely and inappropriately changed the IEPs of these students.

72.     On February 26, 2018, Principal James accused her in an email of not using a professional tone in writing rebuttals to his accusations regarding special education noncompliance issues. Principal James never addressed her ADA/IDEA noncompliance claims, and illegally changed the students' IEPs to take away their ICT services.

73.     On February 26, 2018, Ms. Salahuddin again contacted Chancellor Farina and her Superintendent McBryde by email reporting additional misconduct of Principal James and his administration.

74.     On February 27, 2018, Principal James mandated Ms. Salahuddin to attend a UFT classroom management professional development course.

75.     On March 1, 2018, Principal James observed Ms. Salahuddin and issued her an observation report on April 17, 2018, which included six ineffective ratings and one developing rating.

76.     On March 8, 2018, Ms. Salahuddin was notified by her UFT District representative Vicki Buccellatto that her January 2018 informal observation would be removed because she won her APPR grievance. The next day, on March 9, 2018, Principal James returned to observe her. Ms. Salahuddin's support teacher actually was teaching the class but Principal

James gave Ms. Salahuddin an overall ineffective rating on the observation, even though the reading teacher was modeling best practices during this observation, not Ms. Salahuddin.

77.     The same week, AP Vosges and AP Radix came in to observe Ms. Salahuddin, but no special needs mental health services were brought in for her students. Ms. Salahuddin was only given temporary support with a substitute extra teacher for a few periods which was short lived.

78.     During the week of March 26, 2018, Ms. Salahuddin was issued three 48-hour disciplinary notices by her administration.

79.     On March 28, 2018, Principal James entered Ms. Salahuddin's classroom to observe a math lesson and left immediately when some of her students in the class started fighting. Principal James failed to intervene, modeling avoidance and redirection instead.

80.     On March 29, 2018, UFT Chapter leader Allison Shepherd and Ms. Salahuddin attended a disciplinary meeting with Principal James to answer disciplinary charges and unprofessional misconduct claims.

81.     On April 10, 2018, Principal James gave Ms. Salahuddin another disciplinary letter for an issue regarding classroom management.

82.     On April 10, 2018, Principal James and Superintendent McBryde sent Ms. Salahuddin to an involuntary medical examination with the NYCDOE Medical Bureau, which she attended on April 11, 2018, after which she was immediately found fit to work by DOE psychologist Dr. Garner.

83.     On April 16, 2018, AP Vosges notified Ms. Salahuddin that she was assigned and scheduled to score ELA examinations with insufficient notice, knowing running records and bulletin boards were due the week of April 17, 2018.

84.     On April 10, 2018, April 16, 2018, and April 18, 2018, Ms. Salahuddin sent emails to Servina Lovell, Roger Platt, Gail Adman, Lindsey Harr, Scott Bloom, Donavan Lauther,

Kenyetta Reid, and Respect for All regarding volatile incidents, unmet special education services and behavior/mental health issues at the school.

85. On April 25, 2018, Principal James excluded a teacher Ms. Bedneau's class and Ms. Salahuddin's class from the school Quality Review by sending them out of the building that day on a class trip. The Quality Reviewer was at the school that day to interview teachers. Ms. Salahuddin did not have human resources support to help students struggling with social and emotional issues during the trip.

86. On April 28, 2018, AP Vosges gave Ms. Salahuddin a disciplinary letter falsely accusing her of safety and security issues in her classroom that allegedly happened in January 2018.

87. On May 8, 2018, Ms. Salahuddin was removed from her first grade class and was made a substitute teacher throughout the building and was assigned to teach classes out of license.

88. On May 9, 2018, Ms. Salahuddin filed a grievance about being removed from the first grade class. As a settlement of this grievance, Ms. Salahuddin was given a reading assignment for the rest of the school year. Because of an irregular schedule, this impacted her Ramadan religious fasting observance by having to rotate throughout the school.

89. On May 12, 2018, the reading teacher Ms. Stribling assigned to take over Ms. Salahuddin's class received additional laptops, resources, additional staff, school supplies, and special education services, which Ms. Salahuddin had not previously received when she was assigned to the class.

90. On May 14, 2018, three teachers were assigned to Ms. Stribling's class to support her.

91. On June 18, 2018, AP Vosges observed Ms. Salahuddin while in a reading coach position and gave her an observation report which included 9 Effectives and 2 Developings.

92.     In June 2018, Ms. Salahuddin received a Developing rating overall for the 2018-19 school year, but through the UFT grievance process, the overall rating eventually was changed to Effective overall on February 1, 2019.

93.     AP Radix was demoted to a teacher and went to another district at the end of the 2017-18 school year.  AP Vosges was transferred to a neighboring school and was replaced by Ms. Murat who became the new assistant principal at the school.

94.     On August 13, 2018, Ms. Salahuddin filed an EEOC charge alleging religious discrimination.

**2018-2019 School Year**

95.     In the 2018-2019 school year, Ms. Salahuddin was denied her teaching preferences by school administration and was assigned an ICT pre-Kindergarten class.

96.     Beginning in September 2017 and continuing throughout June 2019, Principal James allowed her colleague, Mr. Daniels, to report to work with no lesson plans and gave him effective and satisfactory ratings, in contrast to Ms. Salahuddin.

97.     Beginning in September 2018 and continuing through June 2019, Principal James refused to give Ms. Salahuddin a key to her classroom closet to disinfect the classroom after removing deceased vermin that the custodial staff had not removed. On September 4, 2018, Principal James excluded Ms. Salahuddin from an email regarding the change of time for Pre-K classes.

98.     On September 5, 2018, Ms. Salahuddin received a disciplinary letter, the first she received from Principal James regarding cell phone usage during instruction.

99.     On September 14, 2018, Principal James excluded Ms. Salahuddin from early childhood group emails (3K-preK).

100.    On October 18, 2018, Ms. Salahuddin filed an OEO complaint alleging religious discrimination with the DOE OEO office.   No action was taken on the complaint by OEO.

101.     Ms. Salahuddin requested whistleblower protection and filed a complaint with the Public Advocate on October 19, 2018 and a complaint with the Office of the Comptroller on October 22, 2018.

102.     Beginning on October 25, 2018, Principal James failed to provide a special education teacher for Ms. Salahuddin's ICT Pre-K class.

103.     On November 18, 2018, Ms. Salahuddin spoke about special needs, lack of curriculum articles, and violence at her school in an article in the *Chief Leader* newspaper.

104.     On January 18, 2019, Ms. Finney, special investigator from OSI, investigated and interviewed the school staff and Ms. Salahuddin concerning a harassment complaint that Ms. Salahuddin had filed against Principal James.

105.     On February 1, 2019, immediately after attending Ms. Salahuddin's Step three grievance at 100 Gold Street, Principal James scheduled a pre-observation with Assistant Principal Murat and Ms. Salahuddin.  He violated the Memorandum of Agreement between the UFT and NYCDOE by conducting a pre-observation with her without lesson plans nor specifics, other than directives stating Principal James was to observe her on February 6, 2019.

106.     The same day, on February 1, 2019, Ms. Salahuddin received a 48-hour notice for leaving the building on February 1, 2019.

107.     On February 5, 2019, Ms. Salahuddin reported Principal James via email to the UFT, NYCDOE, NYSED, USDOJ, OCR, EEOC, Mayor De Blasio, OEO, OSI, SCI, the Public Advocate, and the Comptroller, regarding special education violations, harassment, retaliation, discrimination, and the deprivation of services, technology, and resources at the school.

108.     Principal James notified Ms. Salahuddin he was observing her on the anniversary date of the death of her oldest son, February 8, 2019, knowing the previous school year, former Assistant Principal Radix, Assistant Principal Murat, and reading coach Ms. Johnson observed her on the same day last school year on February 8, 2018.

109.    In February 2019, Ms. Salahuddin filed special education complaints against Principal James through her UFT union and with the NYSED Special Education office.  Principal James was eventually found guilty of 4 of 6 of these special education complaints in May 2019.

110.    In retaliation for filing these special education complaints, Ms. Salahuddin was observed by school administration on February 15, 2019 and was rated Unsatisfactory in every category.

111.    On March 11, 2019, while Ms. Salahuddin stayed late disinfecting, cleaning, organizing, and removing ongoing vermin issues in her classroom in preparation for an Early Childhood Environment Rating Scale ("ECERS") visit, she tripped and fell on an uneven sidewalk, and sustained injuries. The next day, Principal James reprimanded Ms. Salahuddin for staying late and stated teachers needed to get permission to stay late.

112.    After returning from Spring break in April 2019, Principal James retaliated against Ms. Salahuddin after the special education complaint findings and questioned her about not being at her assignment, knowing her colleagues Ms. Quinones-Clark and Ms. Shepherd in her ICT class left their class to use the restrooms and were allowed to leave their students with paraprofessionals. In April 2019, after Superintendent McBryde and Principal James walked past her in a vacant room shared by the nurse, Principal James demanded that she remove all personal belongings from the after-school room, only to assign rooms to three educational assistants without a licensed teacher.

113.    In April 2019, for Teachers' Appreciation Week, Principal James ordered customized jerseys for every staff member and gave certificates to all the staff except Plaintiff.

114.    On June 25, 2019, Principal James gave Ms. Salahuddin a false disciplinary letter for the February 1, 2019 incident for leaving the building to attend a hearing.

115.    On the same date, Principal James gave Ms. Salahuddin a false disciplinary letter for incidents on March 21 and March 28, 2019, regarding allegedly abandoning her classroom.

116.     Ms. Salahuddin received an Unsatisfactory overall rating in June 2019 for the 2018-2019 school year.

117.     On July 17, 2019, Ms. Salahuddin filed a new EEOC charge based on disability and religion, and retaliation against her for advocating for various special education issues at the school during the 2017-2018 and 2018-2019 school years.

118.     Ms. Salahuddin also lost per session opportunities for summer school in the 2018-2019 school year with the Unsatisfactory annual rating.

119.     In July and August 2019, Ms. Salahuddin reported vermin and roach infestation to NYCDOE, DOH, UFT, and NYSED.

**2019-2020 School Year**

120.     Since the 2019-2020 school year, Ms. Salahuddin has been assigned a 3-K class.

121.     On August 26, 27, and 28, 2019, Ms. Salahuddin noticed the closets were not cleared or cleaned for the pilot 3k program, and filed a complaint with the New York State Department of Health regarding the vermin and roaches.

122.     On August 28, 2019, Principal James refused to introduce the new staff members to Ms. Salahuddin.

123.     On September 3 and 4, 2019, the majority of the staff at the school that Ms. Salahuddin mentioned in her EEOC, OCR, NYSED, and DOH complaints refused to speak to her. Principal James acknowledged progress for her colleagues' standardized test scores but refused to acknowledge her ECERS passing scores.

124.     From the beginning of the 2019-2020 school year, Ms. Salahuddin reported to NYCDOE officials and union representatives that Principal James failed to provide her with instructional materials as well as NYC Department of Health mandated health and safety equipment/supplies, including ADA regulated age appropriate lavatory seats for students that were toddlers between the ages of 2.5-3 years old.

125.     In September 2019, Ms. Salahuddin requested a female paraprofessional for her classroom and an ADA accommodation because of a March 2019 injury.  Ms. Salahuddin verbally asked school administration for these accommodations, but was denied.

126.     On September 20, 2019, Principal James and AP Richards accused Ms. Salahuddin of trying to report a violent incident regarding her three year old student in the Online Occurrence Reporting System after he instructed the entire staff to report all incidents.   On September 24, 2019, Ms. Salahuddin received a 48-hour notice from the school secretary regarding the incident.

127.     On September 25, 2019, Principal James falsely accused Ms. Salahuddin of violating the FERPA law by calling a student autistic and disseminating a child's name, even though the parent coordinator Ms. Letang admitted doing so rather than her.

128.     On September 28, 2019, UFT District Representative Vicki Buccellato and Ms. Salahuddin met with Principal James about professional misconduct allegations against her.

129.     On October 4, 2019, Ms. Salahuddin received a letter requesting a Step 1 grievance, knowing that both she and Principal James received a Step 2 grievance date scheduled for October 23, 2019 because Principal James failed to respond to the Step 1 grievance.

130.     On October 7, 2019, Ms. Salahuddin received a 48-hour notice scheduled for 11:30 am despite Principal James knowing she was teaching during the time.

131.     On October 16, 2019, at a disciplinary meeting, Principal James accused Ms. Salahuddin of violating his instructions by forwarding his email to Chancellor Richard Carranza and an OSI investigator from the DOE, Ms. Finney. Principal James demanded at future disciplinary meetings, he will no longer accept written responses from her, and only verbal replies will be acknowledged from her.

132.     On October 21, 2019, Principal James was notified via email and then via letter on October 22, 2019, about Ms. Salahuddin's grievance hearing scheduled for October 23, 2019

at noon at 100 Gold Street in lower Manhattan. However, Principal James interfered with the grievance process by taking away her prep period that day and denied her traveling time from the school to 100 Gold Street, forcing her to pay $68.00 for an Uber. On November 6 and November 7, 2019, Principal James denied her access to her personnel file and previous preference sheets.

133.    On January 7, 2020, Ms. Cole, the pupil accountant secretary, informed Ms. Salahuddin that Principal James did not approve her furniture request for classes 3K2, but approved her colleagues' supply list.

134.    After Principal James refused to approve Ms. Salahuddin's order, on Saturday, January 18, 2020, Ms. Salahuddin ordered two water/sand tables and additional toileting items for her class with her own personal funds.

135.    On January 29, 2020, Principal James had a custodial engineer hauled a dilapidated and frayed substandard bookcase from the basement into her classroom, and a few days later he sent another frayed bookcase for Ms. Salahuddin's students to use.

136.    On February 13, 2020, AP Richards gave Ms. Salahuddin a poorly rated observation in January 2020, using the wrong rating rubric for 3K teaching.

137.    On February 24, 2020, after Ms. Salahuddin had verbally requested on September 6, 2019, a reasonable accommodation for an additional paraprofessional for her classroom, Ms. Salahuddin formally renewed her request in writing. Principal James ignored both these verbal and written requests for this disability-based accommodation.

138.    From March 17 to March 19, 2020, Principal James excluded Ms. Salahuddin from schoolwide emails shortly before the pandemic.

139.    On March 24, 2020, Ms. Salahuddin emailed administration that Microsoft Teams was preventing her from entering six students to Microsoft Teams because their names were not registered on Microsoft Teams. This forced Plaintiff to use Google Classroom as her Learning Management System. Principal James issued a disciplinary letter to Ms. Salahuddin's file for not

showing evidence of usage of Microsoft Teams.  On March 25, 2020 and April 2, 2020, during meetings, Principal James muted her volume, arbitrarily removed her from the meetings, and refused her request to rejoin the mandated staff development meeting via Zoom.

140.	On April 18, 2020, Principal James demanded classroom visitation to her class via Microsoft Teams, knowing all of her students were not populated on his Learning Management System (LMS), but allowed other colleagues to use Class Dojo and cell phone as an LMS to visit their classes.

141.	On May 18, 2020, Principal James requested Ms. Salahuddin to migrate all of her computer files from Google classroom to Microsoft teams, even though other teachers at the school were not similarly asked to migrate their platforms.  Principal James requested her to do this during her holiday of Ramadan.

142.	On June 1, 2020, Principal James demanded that Ms. Salahuddin cease all Public Broadcasting System (Channel 13) partnerships via email.

143.	On June 3, 2020, Principal James prevented Ms. Salahuddin from participating in staff development by booting and removing Plaintiff from a meeting for two hours.

144.	On June 12, 2020, Ms. Salahuddin was summoned to a disciplinary hearing in which she was accused of not completing the Professional Development survey.

145.	On June 16, 2020, Principal James requested only from Ms. Salahuddin evidence of interactions with students/families on Microsoft Teams from May 20, 2020, evidence of feedback to students/families, evidence of mastery/feedback of tasks from the week of June 8, 2020, and evidence of asynchronous or synchronous daily assignments or interactions on Microsoft teams.

146.	On June 17, 2020, Ms. Salahuddin received a summons to a disciplinary hearing in which she was accused of not migrating her files from Google Classroom and Class Dojo to Microsoft Teams, although she never left Microsoft Teams.

147.     On June 22, 2020, Principal James denied Ms. Salahuddin a Step 1 reorganization grievance regarding her preference being denied three consecutive years.

148.     On June 26, 2020, Principal James gave Ms. Salahuddin two disciplinary letters relating to her remote teaching on Microsoft teams on June 16, 2020, and improper use of PowerPoint on June 5, 2020.

149.     Ms. Salahuddin was not given an annual rating for the 2019-2020 school year due to the pandemic.

**2020-2021 School Year**

150.     For the 2020-2021 school year, Ms. Salahuddin has qualified for remote teaching reasonable accommodations due to her medical conditions, and has taught 3-K.

151.     On September 8, 2020, Principal James verbally stated at a zoom staff meeting to her and other staff that "[he] was not dealing with UFT nonsense this year", which was clearly directed at Ms. Salahuddin.

152.     On September 14 and 15, 2020, per Principal James' directive, Ms. Salahuddin was forced to duplicate a two-day iLearn training she did during the summer.

153.     Principal James illegally assigned Ms. Salahuddin a new additional grade (both 3-K and Pre-K) for 2020-21 school year and forced her to upload the Pre-K lesson plans, activities, google slides, and assignments for September 2020 to November 2020.  Principal James has been cyberstalking her by listening on mute with his camera off while she has been working remotely from home  On October 5, 2020, Ms. Salahuddin was falsely accused of disseminating personal information about an iLearnNYC staff member, even though the parent coordinator, Ms. Letang, disclosed the information, and Ms. Letang did not receive a disciplinary letter to file.

154.     On October 7, 2020, Principal James requested Ms. Salahuddin not contact DOITT and other organizations, and was falsely accused of insubordination. On the same day,

Principal James also directed Ms. Salahuddin not to collaborate with her peers during collaboration period and grade inquiry meetings.

155.    On October 8, 2020, Principal James sent Ms. Salahuddin an email demanding that she cease all emails to DOE leadership including his supervisors, Chancellor Carranza and Deputy Chancellor Conyers.

156.    On October 15, 2020, Principal James held a disciplinary meeting against her because she contacted Chancellor Carranza, Deputy Chancellor Conyers, UFT President Mulgrew, EEOC, UFT District Representative Vicki Buccellato, and the US DOE OCR for intervention and assistance.

157.    On October 29, 2020, Principal James denied Ms. Salahuddin's students an opportunity to showcase pockets of excellence by demanding her in writing not to represent the school nor invite her students on "Let us Learn at Home" to the Public Broadcasting System.

158.    On October 30, 2020, Principal James denied Ms. Salahuddin's student a free and affordable education by refusing to release her at 8:30 am for a meeting, causing her student to wait in the zoom lobby for her while Ms. Salahuddin attended her disciplinary meeting.

159.    On November 2, 2020, Principal James threatened disciplinary charges against Ms. Salahuddin after she contacted Chancellor Carranza and other pertinent entities regarding Principal James' behaviors.

160.    On November 12, 2020, Principal James denied Ms. Salahuddin's students free welcome kits from LINC (Literacy Inc, an outside literacy organization) by not responding to her request to schedule a date to give her students the gifts from LINC. As a result, LINC did not contact the school that year.

161.    On November 25, 2020, Ms. Salahuddin was improperly observed by AP Richards using the Early Learning Outcomes Framework (ELOF) instead of the Early Framework of Quality (EFQ) more appropriate to evaluate teachers.

162.     On December 11, 2020, Ms. Salahuddin sent a rebuttal to AP Richards regarding the November 25, 2020 observation and requested English Language Learners/English New Learners, a bilingual teacher, and a paraprofessional for in class assistance, as this was required special education services for all grades.

163.     On December 14, 2020, Principal James reprimanded Ms. Salahuddin because she notified both administrators **Principal James and Assistant Principal Richards** in an email that they scheduled a video conference at the same time and date.

164.     On December 18, 2020, Principal James wrongfully accused Ms. Salahuddin of disseminating emails to entities with students' information (even though the pictures were blocked) without the NYCDOE release form signed by parents when making her complaint with the UFT.

165.     On the same day, Ms. Salahuddin emailed AP Richards and Principal James requesting ENL services for her student after AP Richards wrote an observation criticizing her interaction with a non-English speaking student.

166.     On January 4, 2021, AP Richards wrongfully accused Ms. Salahuddin of ordering an ASQ-3 screening test, and Principal James questioned Ms. Salahuddin who authorized her to contact the Division of Early Childhood Education (DECE) and order screenings for students entering 3K.

167.     On January 5, 2021, after Ms. Salahuddin clarified misinformation surrounding the abundance of emails regarding the ASQ-3 screening test,  Principal James demanded that she not contact DECE and, on January 8, 2021, for her colleagues to disregard her email.  Later that day, Ms. Salahuddin spoke with NYCDOE OEO Officer, Ms. Caroline Faughn, to discuss the five complaints she filed against Principal James from 2018 to 2020 which the OEO refused to act upon.  On January 11, 2021, Ms. Salahuddin received a summons to report to a disciplinary

meeting on January 12, 2021 accusing her of being unprofessional in the letter dated January 8, 2021.

168.     On January 14, 2021, Ms. Salahuddin received a communication from NYCDOE OEO dismissing her complaints and advising her that certain incidents were forwarded to Superintendent McBryde.

169.     On January 15, 2021, Principal James demanded that Ms. Salahuddin forward her weekly logs on his form by 3pm.  Principal James made these demands only to her while other staff members stopped forwarding weekly logs.

170.     On January 25, 2021, Principal James was forced to assign an educational assistant to Ms. Salahuddin's 3-K class after attending a Step 2 grievance, and the paraprofessional, Ms. Torres was home on remote without an assignment from October 2020 to present.  Furthermore, AP Richards denied her request to add her paraprofessional on her iLearn page although other paraprofessionals had access to iLearn.

171.     On January 27, 2021, Principal James gave Ms. Salahuddin a disciplinary letter related to her email referenced above on January 8, 2021, alleging it was unprofessional.

172.     On January 29, 2021, Principal James gave Ms. Salahuddin another disciplinary letter related to an email she sent to higher up administrators on October 28, 2020 regarding PBS, alleging insubordination.

173.     On February 1 and 2, 2021, Principal James failed to provide her newly assigned bilingual educational assistant Ms. Torres with a computer, making Ms. Salahuddin duplicate work and continue to conduct the duties of a remote paraprofessional.

174.     On February 2, 2021, Ms. Salahuddin attended a Step 1 grievance regarding Principal James' refusal to assign an educational assistant to her class from September 16, 2020 to January 25, 2021 and Principal James blocking her from mandated teacher collaboration with her peers.

175. On February 5, 2021, Principal James falsely accused Ms. Salahuddin of submitting blank mandated office hour logs, even though she actually completed them. Other teachers were not disciplined for not completing these logs.

176. On February 9, 2021, Ms. Salahuddin attended a district level operational issues grievance meeting, in which she requested compensation for not having a mandated paraprofessional from September 16, 2020 to January 25, 2021, in her classroom.

177. On February 11, 2021, Ms. Salahuddin noticed attendance tampering in her classes by administration and reported the attendance tampering to Chancellor Carranza.

178. On February 25, 2021, Principal James sent Ms. Salahuddin an email accusing her of submitting daily attendance after 9:30 am although Principal James knew the attendance team made the errors. Later that day, Principal James excluded Ms. Salahuddin from a schoolwide email regarding Parent Teachers conferences.

179. On February 26, 2021, Principal James directed Ms. Salahuddin to cease forwarding her daily attendance to the attendance committee and concluded that the attendance team and him would be monitoring her attendance.

180. On March 10, 2021, Principal James caused Ms. Salahuddin to lose per session pay when he falsely gave her an unsatisfactory rating for the 2018-2019 school year.

181. On March 12, 2021, Ms. Salahuddin was the only teacher who received excessive conferences with Principal James; two emails summoning her to pre-observation and a one-to-one meeting.

182. On March 15, 2021, Ms. Salahuddin's request for union representation at several meetings with school administration was denied.

183. On March 16, 2021, Ms. Salahuddin and Principal James met for a one-to-one meeting in which Principal James dominated the conversation and denied her request to send

responses via chat, email, or writing. Later that day, Ms. Salahuddin received a disciplinary hearing notice falsely accusing her of being insubordinate.

184.     On March 22, 2021, Ms. Salahuddin took the initiative to send a request for the Zoom link to be forwarded to her to meet for her pre-observation.  Principal James did not request lesson plans, did not offer guidance, and did not have a Teacher Improvement Plan for her, even after she received an Unsatisfactory rating in the previous school year.  Principal James demanded that all her students attend the session at 9:30 a.m. and submit her lesson plans on Friday, March 26, 2021, knowing early childhood students can have asynchronous and synchronous instructions.

185.     On March 23, 2021, Principal James forwarded the link for Ms. Salahuddin's disciplinary meeting late and refused to include her on the schoolwide email regarding an obituary notice about her colleague.

186.     On March 23, 2021, Ms. Salahuddin emailed NYC Chancellor Meisha Ross Porter, Deputy Chancellor Conyers, previous Chancellor Carranza, among others, that the school administration's harassment, retaliation, intimidation, and discrimination against her was affecting her health.

187.     On April 5 and 6, 2021, Ms. Salahuddin received three letters from Principal James, AP Richards, and Ms. Daisy Morales accusing her of not submitting her daily attendance on time.

188.     Ms. Salahuddin has been enrolled in the UFT Peer Intervention Program since April 5, 2021.  She  is receiving counseling from the UFT's PIP program due to undue stress.

189.     During the week of April 26, 2021, Ms. Salahuddin sent emails to the NYCDOE disability unit requesting expanded religious and ADA accommodations.

190.     On April 26, 2021, Principal James demanded all of her students to attend the observation on May 5, 2021. Again, he did not request lesson plans, provide a Teacher Improvement Plan, or specify what he was looking for during the observation.

191.     On April 29, May 2, and May 4, 2021, Ms. Salahuddin requested informal and formal expanded reasonable religious and ADA accommodation via the DOE Office of Disability Accommodation, the UFT, and Chancellor Porter.  On May 5, 2021, Ms. Salahuddin requested from Principal James for a reasonable religious accommodation for her May 5, 2021 observation to be postponed after Ramadan, which was denied.

192.     On May 5, 2021, Ms. Salahuddin was observed by Principal James, AP Richards, and a substitute paraprofessional Ms. Spencer.

193.     On May 14, 2021 and May 19, 2021, Ms. Salahuddin requested access to her personnel file.  AP Richards told her  she will see her personnel file on the last week of school.

194.     Ms. Salahuddin received two right to sue letters dated February 23, 2021, and March 9, 2021, from the EEOC, which are annexed hereto as Exhibit A.


**FIRST CLAIM FOR RELIEF**
**RETALIATION AGAINST PLAINTIFFS FOR EXERCISING FREEDOM OF SPEECH IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**
**(AGAINST ALL DEFENDANTS)**

195.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, as if fully set forth herein.

196.     While acting under color of State Law, Defendants violated Plaintiffs' First Amendment rights by retaliating against them for exercising their freedom of speech as citizens with regard to matters of public concern.

197.     As a proximate result of Defendants' retaliatory actions against Plaintiffs, they have suffered and continue to suffer a loss of monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to their professional reputation, in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**RETALIATION IN VIOLATION OF**
**NEW YORK STATE CIVIL SERVICE LAW § 75-B**
**(AGAINST ALL DEFENDANTS)**

198.     Plaintiffs repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

199.     Plaintiffs reported violations of federal and state law by the school administration, thereby engaged in a protected activity as defined in New York Civil Service Law § 75-b(2)(a).

200.     Defendants had notice that Plaintiffs participated in such protected activities.

201.     Defendants retaliated against Plaintiffs by engaging in adverse "personnel actions" against them as defined by New York Civil Service Law § 75-b(1)(d).

202.     As a proximate result of Defendants' retaliatory actions against Plaintiffs, they have suffered and continue to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to their professional reputation, in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**TITLE VII RELIGIOUS DISCRIMINATION AND RETALIATION AND HOSTILE WORK**
**ENVIRONMENT**
**(FOR SALAHUDDIN AGAINST NYCDOE)**

203.     Plaintiff Salahuddin repeats and realleges each and every allegation contained above, inclusive, with the same force and effect as if more fully set forth herein.

204.     Plaintiff Salahuddin has been discriminated and retaliated against based on her Muslim religion and failure to accommodate her religion.

205.     Plaintiff Salahuddin also has been retaliated against by the District for filing a protected discrimination complaint based on her religion.

## FOURTH CLAIM FOR RELIEF
## ADA DISABILITY DISCRIMINATION AND RETALIATION AND HOSTILE WORK ENVIRONMENT
## (FOR SALAHUDDIN AGAINST NYCDOE)

206.     Plaintiff Salahuddin repeats and realleges each and every allegation contained above, inclusive, with the same force and effect as if more fully set forth herein.

207.     Plaintiff Salahuddin has been discriminated and retaliated against based on her disability based on work-related anxiety and PTSD and been subject to a hostile work environment, including unauthorized disclosure of her protected health information, improper requests for fitness to duty, interference with her right to request FMLA leave and denial of reinstatement to her position.  Her mental health diagnoses are protected activity under the ADA.


## FIFTH CLAIM FOR RELIEF
## DISABILITY DISCRIMINATION UNDER THE FEDERAL REHABILITATION ACT FOR ADVOCATING FOR SPECIAL NEEDS STUDENTS
## (FOR SALAHUDDIN AGAINST NYCDOE)

208.     Plaintiff Salahuddin repeats and realleges each and every allegation contained above, inclusive, with the same force and effect as if more fully set forth herein.

209.     Plaintiff Salahuddin has been discriminated and retaliated against for advocating for the needs of her special education students.

## SIXTH CLAIM FOR RELIEF
## NYS HUMAN RIGHTS LAW DISABILITY AND RELIGIOUS DISCRIMINATION
## (FOR SALAHUDDIN AGAINST ALL DEFENDANTS)

210.     Plaintiff Salahuddin repeats and realleges each and every allegation contained above, inclusive, with the same force and effect as if more fully set forth herein.

211.     Plaintiff Salahuddin has been discriminated and retaliated against based on her disability based on work-related anxiety and PTSD and been subject to a hostile work environment, including unauthorized disclosure of her protected health information, improper

requests for fitness to duty, interference with her right to request FMLA leave and denial of reinstatement to her position. Her mental health diagnoses are protected activity under the ADA.

**SEVENTH CLAIM FOR RELIEF**
**NYC HUMAN RIGHTS LAW DISABILITY AND RELIGIOUS DISCRIMINATION**
**(FOR SALAHUDDIN AGAINST ALL DEFENDANTS)**

212. Plaintiff Salahuddin repeats and realleges each and every allegation contained above, inclusive, with the same force and effect as if more fully set forth herein.

213. Plaintiff Salahuddin has been discriminated and retaliated against based on her disability based on work-related anxiety and PTSD and been subject to a hostile work environment, including unauthorized disclosure of her protected health information, improper requests for fitness to duty, interference with her right to request FMLA leave and denial of reinstatement to her position. Her mental health diagnoses are protected activity under the ADA.

**JURY DEMAND**

Plaintiffs hereby demand a trial by Jury.

**PRAYER/DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants as follows:

a. Judgment declaring that Defendants' acts violated Plaintiffs' rights as secured by federal and state law prohibiting retaliation in employment;

b. Enjoining Defendants from any further acts adversely affecting the terms and conditions of Plaintiffs' employment including their compensation and privileges;

c. Compensatory damages to compensate Plaintiffs for economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and

mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

d.  Punitive damages against one or all of the Defendants;

e.  Statutory attorneys' fees, interest, costs, and disbursements, and

f.  For such other and further legal, equitable or other relief as the Court deems just and proper.

DATED:   New York, New York
         May 24, 2021

                    GLASS HARLOW & HOGROGIAN LLP
                    85 Broad Street, 16th Floor @ WeWork
                    New York, NY 10004
                    (212) 537-6859

         By:   _____s/_____
               BRYAN GLASS, ESQ.