UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                              :

**CARMEN APPLEWHITE** and **JAMILLAH SALAHUDDIN**,

                         Plaintiffs,      :    **MEMORANDUM DECISION AND ORDER**

        – against –      :    21-CV-2928 (AMD) (CLP)

**N.Y.C. DEP'T OF EDUC.**, **THE CITY OF NEW YORK**, **RICHARD A. CARRANZA**, **KRISTINA BEECHER**, **THOMAS MCBRYDE**, **RONALD JAMES, JR.**, and **TIFFANY RICHARDS**,

                           Defendants.
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       The *pro se* plaintiffs bring this action against the City of New York, the New York City Department of Education ("DOE") and five DOE employees.[1]  The plaintiffs allege that the defendants violated the First Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, the Whistleblower Protection Act of 1989 ("WPA"), the National Labor Relations Act ("NLRA"), New York State Civil Service Law § 75-B, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").[2]

---

[1] The plaintiffs were represented by counsel until September 7, 2022, when Magistrate Judge Cheryl Pollak granted counsel's motion to withdraw.

[2] The plaintiffs bring claims under some or all of these statutes for retaliation, disability discrimination, discrimination for advocating for special needs students, and failure to engage in a cooperative dialogue. Salahuddin also brings religious discrimination and retaliation claims, hostile work environment claims on the basis of religion and disability, and failure to accommodate claims.

The plaintiffs appear to raise a due process claim in their opposition papers.  (*See* ECF No. 87 at 1, 6; ECF No. 87-1 at 4.)  The Court does not address this claim, to the extent the plaintiffs raise it, because "[e]ven a plaintiff proceeding pro se may not raise entirely new causes of action for the first time in [her] opposition papers."  *Herrera v. Navient Corps.*, No. 19-CV-6583, 2020 U.S. Dist. LEXIS 122710, at *13 (E.D.N.Y. July 13, 2020) (internal quotation marks omitted); *see also Murray et al v. UPS et al*,

Before the Court is the defendants' motion to dismiss the second amended complaint for failure

to state a claim upon which relief may be granted.  (ECF No. 81.)  As explained below, the

defendants' motion is granted.

## BACKGROUND

The following facts are drawn from the plaintiffs' second amended complaint (the

"SAC") (ECF No. 70) and opposition materials (ECF Nos. 87 ("Plaintiff's [sic] Affidavit in

Opposition to Defendant's [sic] Motion to Dismiss"), 87-1 ("Memorandum of Law in Support of

Opposing a Motion to Dismiss")).[3]  The Court also takes judicial notice of the newspaper articles

attached to the plaintiffs' opposition and the exhibits in support of the defendants' reply.  (ECF

Nos. 89-2, 89-3.)[4]  Both plaintiffs seek an order declaring that the defendants violated the

plaintiffs' rights under federal and state law, enjoining the defendants "from any further acts

---

No. 20-CV-1427, 2022 U.S. Dist. LEXIS 172969, at *41 n.31 (E.D.N.Y. Sept. 25, 2022) (collecting cases).

[3] According to the plaintiffs, ECF No. 87 is an affidavit and ECF No. 87-1 is a memorandum of law.  The Court refers to both documents together as "the opposition."

The plaintiffs make new factual allegations in the opposition.  "Although the general rule is that a plaintiff may not raise new allegations in an opposition to a motion to dismiss," the Court considers allegations in the plaintiffs' opposition and its supporting exhibits because the plaintiffs are *pro se*. *Pierre v. N.Y.C. Fire Dep't*, No. 22-CV-7425, 2024 U.S. Dist. LEXIS 17160, at *2 n.2 (E.D.N.Y. Jan. 31, 2024) (citations omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.")

For the most part, the plaintiffs' allegations are vague and include no detail about what each defendant did or when they did it.  Nevertheless, for purposes of this motion, the Court accepts as true the plaintiffs' factual allegations and draws all reasonable inferences in the plaintiffs' favor.  *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).

[4] Applewhite's state court petition (ECF No. 89-2) is a court filing related to this proceeding and is therefore in the public record, as are the newspaper articles.  *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 324 n.2 (S.D.N.Y. 2021) (courts may take judicial notice of such materials without converting a motion to dismiss into a motion for summary judgment). The DOE Chancellor's Committee Report on Applewhite's appeal of her "ineffective" rating (ECF No. 89-3) is incorporated by reference into the SAC, which directly references the rating and appeal hearing.  *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88–89 (E.D.N.Y. 2016).

adversely affecting the terms and conditions of [the p]laintiffs' employment including their compensation and privileges," and awarding compensatory damages, punitive damages, attorney's fees and costs, as well as any additional "legal, equitable or other relief as the Court deems just and proper." (ECF No. 70 ¶¶ 145–50.)[5]

## I.   Carmen Applewhite

Applewhite began teaching in 1998. (*Id.* ¶ 23.)[6]  She was a middle school teacher at M.S. 143 and an "SETSS Teacher" at P.S. 304 and is now a special education teacher, "ICT Teacher and SETSS Provider" at P.S. 3 in Brooklyn. (*Id.* ¶¶ 22–24.)  Applewhite is "asthmatic and takes medication" (*id.* ¶ 25) and alleges that she is a "qualifying disabled woman" (*id.* ¶ 21), presumably because of her asthma.  She alleges that the defendants knew about her disability "via doctor's letters and previous COVID-19 accommodations." (*Id.* ¶ 122.)

At some point while she was teaching in New York City public schools, Applewhite alleges, she "exposed violations of law, abuse of authority, and substantial and specific danger[s] to public health or safety to the Chief Newspaper and the media" by "fil[ing] charges, grievances, and complaints against the [d]efendants." (*Id.* ¶ 59.)[7]  In October 2018, she

---

[5] The plaintiffs also request "[i]njunctive relief such as a 'cease and desist' order against the [p]laintiffs, and rewarding non-monetary demands to Plaintiffs" (ECF No. 70 ¶ 151), but it is not clear what they mean or why they would want a "'cease-and-desist" order against themselves.

[6] Applewhite has a doctorate degree in "Educational Leadership," a master's degree in "counseling," and an "advanced degree in Education Administration and Supervision." (*Id.* ¶¶ 21–22.)

[7] The opposition includes articles — apparently from *The Chief-Leader* — discussing the plaintiffs' complaints about the conditions in New York City schools and the "bullying, intimidation and harassment" they suffered because they spoke out. (*See* ECF No. 87 at 9–14.)  According to one (undated) article, Applewhite "submitted 11 claims to the state alleging that required special-education staff and services were not provided, and six [of the claims] were substantiated" (*id.* at 12); the state "also substantiated four of Ms. Salahudin's six allegations related to special-education students not being properly served" (*id.* at 11).  Both plaintiffs also filed "grievances and [wrote] letters" about "student-discipline issues and inadequate learning materials" (*id.* at 9), and Salahuddin "wrote a letter saying the school was out of compliance with state policies for English-as-a-New-Language students because there were no ENL Teachers" (*id.*).

"requested and filed for Whistleblower Protection" "from the DOE, Office of Comptroller, Public Advocate, NYS Department of Education, USDOJ and other regulatory agencies." (*Id.* ¶ 78.)

The defendants "ignored" the "Whistleblower Protection" to which she was entitled and "intimidated, harassed, retaliated [against] and bullied" her by engaging in adverse "personnel actions," assigning her "more difficult duties," "demanding increased production," and "creating a hostile work environment for her and an unsafe learning environment for her students." (*Id.* ¶¶ 59, 88.) From September 2017 to June 2022, Applewhite "filed numerous grievances and complaints with several regulatory agencies, local politicians, and school based administrators, the United Federation of Teachers and [the DOE]" in which she "request[ed] that someone with authority intervene on her behalf to stop [the alleged] constant bullying, intimidation, and harassment" to which she was subjected because of her whistleblowing, but no one did so. (*Id.* ¶ 61; *see also id.* ¶¶ 28, 66.) As a result, she alleges, the defendants gave her "an ineffective [teacher] rating" for the 2017-2018 school year (ECF No. 87 at 17)[8] and "subjected [her] to an unsafe hostile work environment in which she was bullied, denied access to curriculum materials, isolated from peers," "prevented [her] from performing her duties as a member of a

---

[8] Applewhite appealed the "ineffective" rating. She and a union representative participated in an April 12, 2019 hearing on the appeal, where the "Administration['s]" "Rating Officer," Kristina Beecher, argued against the appeal. (*See* ECF No. 89-3 (Hearing Report).) The DOE official overseeing the hearing found "no substantial errors or defects" in the rating and "recommend[ed] that the 'Ineffective' rating remain[] unchanged." (*Id.* at 5.)

On October 11, 2019, Applewhite filed a petition for relief in New York state court seeking a judgment overturning or "annul[ing]" the "ineffective" rating and bringing NYSHRL and NYCHRL claims against the DOE and Beecher. (*See* ECF No. 89-2.) The New York County Supreme Court denied the petition and granted the defendants' cross-motion to dismiss because Applewhite's claims were either untimely or outside the scope of the notice of claim and therefore not exhausted. Decision & Order on Motion at 5, *Applewhite v. N.Y.C. Dep't of Educ. et al*, No. 159909/2019 (N.Y. Sup. Ct. Sept. 10, 2020).

protected class," and "denied [her] per session wages" as well as "promotions to administrative positions and positions for teacher leadership roles in the [DOE]" (ECF No. 70 ¶ 61).[9]

Applewhite also alleged that in December 2018, "less than a month" after she spoke to the press about the grievances she filed about the conditions in New York City schools, "she was suddenly given a new group of students" "in second and third grades, despite the fact that students from different grade levels should not be in the same classroom;" she filed a grievance about the change, after which "the harassment intensified." (ECF No. 87 at 11, 14.)[10]  The principal, Kristina Beecher, "started coming into her class and observing her teaching her new students, without any explanation."  (*Id.* at 14.)  She alleges that in the same month "the Principal changed [her] Instructional Assignments three times . . . , subjecting [her] to disparaging treatment and unfair labor practices."  (*Id.* at 17.)

In September 2021, Applewhite requested an "extended ADA accommodation to work from home following the Covid-19 pandemic" because of her disability.  (ECF No. 70 ¶ 69.)  In November 2021, the defendants denied this request "with no explanation."  (*Id.* ¶¶ 26, 69.)  In April 2022, Applewhite "became ill from the stress of her job" because of the "hostile work environment, intimidation and retaliation" and "had to take an emergency leave from work for Restoration of Health."  (*Id.* ¶ 27.)  She asked again to work from home in September 2022 because of "her continued battle with several health challenges;" the defendants denied this request.  (*Id.* ¶ 69.)  Applewhite alleges that the defendants "failed to engage in cooperative

---

[9] At some point, the United Federation of Teachers scheduled a recall election at Applewhite's school, "where she [was] chapter leader for nine years," because union "members in the building" "requested" it. (ECF No. 87 at 11.)  Applewhite appears to contend that the union members requested the election because she "put[] pressure on the Principal." (*Id.* ("All of a sudden, now that I'm putting pressure on the Principal, I'm a bad chapter leader.").)

[10] "Her previous class was made up of third- and fourth-graders." (*Id.* at 14.)

dialogue with [her]" about these requests (*id.* ¶¶ 72, 137) and "placed her in an unsafe and unhealthy work environment [that] expos[ed] her to the [COVID-19] virus twice" (*id.* ¶ 26).[11]

## II.   Jamillah Salahuddin

Salahuddin began working at the DOE in 1990 as a "substitute paraprofessional" at P.S. 137 and became a substitute teacher in 1991.  (*Id.* ¶ 31.)  "After receiving her permanent license," she worked at three different public primary schools.  (*Id.*)  Salahuddin alleges that the defendants' conduct led her to retire early from the DOE (*id.* ¶ 39); she now works as the "early childhood director at Trey Whitfield School" (*id.* ¶ 31).  She is a "qualifying Muslim woman." (*Id.* ¶ 29.)[12]

From 2017 to 2021, Salahuddin "filed charges and complaints with several regulator agencies" "about special education violations, staffing for her JCT class formation, lack of supplies, mandated resources, unfair labor practices, anti-bullying curriculum and mental/behavioral health services for [her] school."  (*Id.* ¶¶ 62, 67.)[13]  As a result, from 2018 to 2021, the defendants "discriminated, harassed, retaliated, intimidated, engaged in disparate treatment and forced [her] to work in a hostile work environment because she was a whistleblower" (*id.* ¶ 38) and because she "advocat[ed] for the needs of [her] special education students and students with challenging behavior" (*id.* ¶ 113).

On January 17, 2018, she "spoke at the District meeting regarding non-compliance issues at her school."  (ECF No. 87 at 17.)  On January 31, 2018, the defendants gave Salahuddin "a poorly rated observation and three disciplinary."  (*Id.*)  On February 2, 2018, Salahuddin

---

[11] Applewhite does not identify the defendants who denied her requests, did not "engage in cooperative dialogue," or who "placed her in and unsafe and unhealthy work environment."

[12] Salahuddin does not explain what "qualifying" means in this context.

[13] At some point, Salahuddin also "requested a formal ADA Accommodation-age-appropriate bathroom for her 3K class" (*id.* ¶ 70), which the defendants denied (*id.* ¶¶ 37, 70).

"contacted the former chancellor Carmen Farina;" "[i]n retaliation, the defendants accused

[Salahuddin] of posing her religious beliefs, praying in class, etc. only to use the reports" to

make her "submit to a Medical Competency" exam on April 11, 2018.  (*Id.*)[14]

The defendants made Salahuddin work as a substitute teacher, gave her two

unsatisfactory overall ratings, "blocked per session pay and teacher training rate" for five years,

"froze her salary, denied ADA accommodations [which] exacerbated her physical disability,

[and] isolated her."  (*Id.* ¶ 62.)  The defendants also "denied her access to pertinent school-wide

emails, blocked her from attending mandated professional development [trainings] during

COVID-19, assigned her to roach and rat infested classrooms, . . . issued disciplinary letters

against her, arranged for ineffective observations about her, denied her school resources, publicly

humiliated [her], screamed at [her], stalked [her], [denied] [her] religious accommodation, . . .

and denied her coaching and adjunct professor positions."  (*Id.*)  Moreover, the "unfair ratings"

that she received "prevented her from applying for childhood coaching and adjunct professor

positions."  (*Id.* ¶ 33.)  As a result of this conduct, Salahuddin "is receiving faith-based and

mental health counseling."  (*Id.* ¶ 38.)

From 2018 to 2021, Salahuddin also "filed complaints and charges against the

[d]efendants for violating her religious rights."  (*Id.* ¶ 97.)[15]  She alleges that the defendants

retaliated against her for doing so (*id.* ¶ 95) and "violated [her] religious rights" (*id.* ¶ 71) by

---

[14] According to a newspaper article, in "late March" 2018, the defendant Ronald James "requested that
Ms. Salahuddin undergo a medical exam at the DOE[] . . . to test her mental-health."  (ECF No. 87 at
10.)  "Among the reasons for the request, Mr. James wrote that Ms. Salahuddin, who is Muslim,
'prayed in class during instructional time,' which she denied," and "'failed to monitor the safety of her
students,' even though Ms. Salahuddin said that she had asked for a para-professional for her classroom
months earlier as well as for more mental-health services at the school."  (*Id.*)

[15] The defendants "were aware of [Salahuddin's] religious observance of Ramadan for four years" (ECF
No. 70 ¶ 129) and "had prior knowledge that [her] religious rights were violated" (*id.* ¶ 96), but "made
no effort to accommodate her religious rights" (*id.* ¶ 71).

7

"giving her [an] excessive workload[]" (*id.*), "assigning more difficult duties" (*id.* ¶ 97), and "demand[ing] increased production" (*id.*).  The defendants did not "provide religious accommodation" (*id.* ¶ 71) "to protect her religious observance" of Ramadan (*id.*; *see also id.* ¶ 128), which caused her "hardships while fasting" (*id.* ¶ 71).

Salahuddin also alleges that the defendants discriminated against her because of her arthritis, a physical disability.  (*Id.* ¶ 100.)  In February and September 2019, she requested ADA accommodations "after an injury she sustained on school premises exacerbated her physical disability." (*Id.* ¶ 70.)  The defendants denied both requests.  (*Id.* ¶¶ 36, 70.)  She alleges that the defendants "failed to engage in cooperative dialogue with [her]" about the accommodations.  (*Id.* ¶¶ 72, 138.)  In September 2021, Salahuddin was "granted medical hardship" (*id.* ¶ 70) and a "medical transfer to teach in a new school with an elevator" (*id.* ¶ 74).  However, she alleges, the defendants did not "fully accommodate her physical disability" (*id.* ¶ 100) because "she was given a classroom on the fourth floor and had to travel from floor to floor escorting her students to her classroom" (*id.* ¶ 70), which "aggravat[ed] her physical disability" (*id.* ¶ 74).  Salahuddin alleges that the defendants' failure to accommodate her disability and to engage in cooperative dialogue about the accommodations "forced her to retire early on November 27, 2021." (*Id.* ¶ 74; *see also id.* ¶¶ 39, 70.)[16]

Salahuddin also alleges that the defendants discriminated against her "based on work-related anxiety and PTSD after years of retaliation," which included the defendants' "failure to accommodate her disabilities." (*Id.* ¶ 100.)  She contends that the defendants' disability discrimination created a hostile work environment that featured "unauthorized disclosure of her

---

[16] Doctors prescribed Salahuddin pain medication and referred her to physical therapy "immediately" after her retirement.  (*Id.* ¶¶ 70, 74.)  As noted above, she now works as an "early childhood director" at Trey Whitfield School.  (*Id.* ¶ 31.)

disability, improper requests for fitness to duty, interference with her right to request FMLA leave, and denial of reinstatement to her position." (*Id.*)  The defendants also "assign[ed her] additional jobs and duties and demand[ed] increased production knowing she was physically disabled." (*Id.* ¶ 102.)  As a result of these retaliatory actions, she suffered "adverse action, a loss of past and future income, monetary damages, [lost] per session pay, frozen salary, humiliation, severe emotional distress, mental and physical anguish for intermittent disability, and suffering, and damage to professional reputation." (*Id.* ¶¶ 104, 109.)

Finally, Salahuddin alleges that the defendants continued to retaliate against her after she retired.  In November and December 2021, the defendants "refus[ed] [her] OP-44/Terminal Pay Request forms for [her] to be paid" (*id.* ¶ 63), which caused her "financial hardship" (*id.*), and in April and May 2023 they "damage[ed] [her] reputation with former colleagues" (*id.* ¶ 64).[17]

## III.   Exhaustion of Administrative Remedies

Applewhite alleges that "[f]rom 2017 to present," she "exhausted all internal (UFT, DOE, NYSED, USDOE, and other regulatory agencies) remedies." (*Id.* ¶ 42.)  In 2018, she "filed for Whistleblower Protection and was advised to seek legal counsel" (*id.* ¶ 46), and in 2019, she "filed an EEOC charge against [the d]efendants and received a right to sue letter" (*id.* ¶ 44).  On February 28, 2022, "within [90] days of the last incident," Applewhite filed a notice of claim with the New York City Comptroller's Office; in July 2022, she "refiled a notice of claim." (*Id.* ¶ 47.)  She alleges that she "forwarded a courtesy copy" of one of the notices of claim "to the Office of the Corporation Counsel of the City of New York." (*Id.* ¶ 48.)  On August 4, 2022, she filed another EEOC charge against the defendants "for continued retaliatory acts of intimidation and harassment and received a right to sue letter [on] August 10, 2023." (*Id.* ¶ 49.)

---

[17] Like Applewhite, Salahuddin does not specify which defendants engaged in the conduct described in this section.

Salahuddin alleges that from 2017 to 2021, she also "exhausted all internal remedies[]" with "DOE's, OEO, UFT, NYSED, USDOE, and regulatory agencies." (*Id.* ¶ 50.)  In August 2018, she filed an EEOC charge against the defendants "for religious discrimination and retaliation" (*id.* ¶ 51) and in October 2018, she "filed for Whistleblowers Protection and Status" and "was advised to seek legal counsel" (*id.* ¶ 52.)  She then filed multiple other EEOC complaints in 2019, 2020, and 2021, and received right to sue letters in October 2021, February 2022, and March 2022.  (*Id.* ¶¶ 53, 54, 57.)  On February 28, 2022, "within [90] days of the last incident," Salahuddin filed a claim with the New York City Comptroller's Office and "refiled a notice of claim" in July 2022.  (*Id.* ¶ 55.)  She "forwarded a courtesy copy" of an unidentified document to the New York City Office of the Corporate Counsel.  (*Id.* ¶ 56.)  She also received "an ADA right to sue letter" in June 2023.  (*Id.* ¶ 57.)

The plaintiffs commenced this action on May 24, 2021 (ECF No. 1) and filed the SAC on October 16, 2023 (ECF No. 70).  On November 14, 2023, the defendants moved to dismiss. (ECF No. 81.)

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and alterations omitted).

An employment discrimination complaint need not establish a *prima facie* case of discrimination, but must "at a minimum assert nonconclusory factual matter sufficient to nudge[] [its] claims . . . across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (first citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); and then citing *Iqbal*, 556 U.S. at 680); *see also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020); *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Because the plaintiffs are proceeding *pro se*, the Court construes the SAC liberally and evaluates it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

## DISCUSSION

The plaintiffs' allegations are for the most part repetitive, vague, and conclusory. The plaintiffs do not include specifics like dates, which defendants did what, or factual context. Instead, they employ broad generalizations and frequently use the passive voice, which makes it "difficult to discern the precise nature of [their] claim[s]." *Manbeck v. Micka*, 640 F. Supp. 2d

351, 366 (S.D.N.Y. 2009).  Nevertheless, the Court analyzes each claim to determine whether

any of them can withstand a motion to dismiss.

## I.    Whistleblower Protection Act and National Labor Relations Act Claims

The plaintiffs' WPA and NLRA claims must be dismissed against all the defendants

because these statutes do not provide relief for municipal employees.  *Richards v. City of New

York*, No. 19-CV-10697, 2021 U.S. Dist. LEXIS 185647, at *29 (S.D.N.Y. Sept. 28, 2021) (the

WPA "provides remedies only to federal employees" (collecting cases)); *Green v. Dep't of Educ.

of N.Y.*, 16 F.4th 1070, 1075 (2d Cir. 2021) ("public employees," including employees of the

DOE, are "not subject to the NLRA" (citations omitted)).  Because the plaintiffs allege only that

they are current or former employees of the New York City DOE, they cannot maintain a cause

of action under either statute; that they are members or officers of the United Federation of

Teachers does not make them federal employees.  *Richards*, 2021 U.S. Dist. LEXIS 185647, at

*29 (dismissing WPA claim brought by municipal employee); *Green*, 16 F.4th at 1075

(dismissing NLRA claim brought by DOE employee).

The NLRA claim must be dismissed for the additional reason that the Court "does not

have jurisdiction over actions under [29 U.S.C. § 158]."  *Commer v. AFSCME*, 272 F. Supp. 2d

332, 339 (S.D.N.Y. 2003) ("The NLRA preempts state and federal court jurisdiction of conduct

which is arguably prohibited under [29 U.S.C. § 158]." (citing *Bldg. Trades Emps. Educ. Ass'n

v. McGowan*, 311 F.3d 501, 508 (2d Cir. 2002))).

## II.    Claims Against the City of New York

The plaintiffs' claims against the City of New York must be dismissed because the City

is not a proper party to this action.  The City "cannot be held liable for the acts of the DOE,"

which is a separate legal entity from the City, "or [the DOE's] employees."  *Carabello v. N.Y.C.

*Dep't of Educ.*, 928 F. Supp. 2d 627, 637–38 (E.D.N.Y. 2013) (quoting *Romero v. City of New York*, 839 F. Supp. 2d 588, 601 (E.D.N.Y. 2012)) (cleaned up); *see also Romero*, 839 F. Supp. 2d at 601 (finding that school employees, like principals, are DOE employees and are "never directly employed by the city," and that the City also cannot be liable for their actions as individual defendants). Accordingly, the City of New York is dismissed from this action.

## III.   Federal Claims Against the Individual Defendants

The plaintiffs' First Amendment, Title VII, ADA, and Rehabilitation Act claims are dismissed against all the individual defendants.

### A.   Carranza, McBryde, and Richards

The claims against the defendants Carranza, McBryde, and Richards are dismissed because, beyond naming them in the caption and alleging their job titles (ECF No. 70 ¶¶ 14–15, 18, 20), the SAC does not allege that they did anything. Accordingly, the complaint does not state plausible claims against them, either in their individual or official capacities. *See Jenkins v. Eaton*, No. 08-CV-713, 2009 U.S. Dist. LEXIS 107814, at *18 n.11 (E.D.N.Y. Nov. 17, 2009) (dismissing claims as to a specific defendant where the complaint "only mention[ed] [that defendant] in a conclusory manner and the allegations are not sufficient to state a claim against her"); *Keita v. U.S. Small Bus. Admin.*, No. 07-CV-4958, 2010 U.S. Dist. LEXIS 9110, at *16 (E.D.N.Y. Feb. 3, 2010) (dismissing claims as to a specific defendant because "[w]ithout some specification of factual detail, the complaint completely fails to state any plausible claim against [that defendant] under the *Iqbal* test"); *Lucien v. Williams*, No. 20-CV-8020, 2023 U.S. Dist. LEXIS 52031, at *13 (S.D.N.Y. Mar. 27, 2023) (dismissing claims where, "[b]eyond naming [the d]efendants in the caption of his [c]omplaint, [the p]laintiff . . . provided only conclusory allegations as to each of them").

### B.     Beecher and James

The SAC does not include any specific allegations about Beecher's or James's conduct. However, the newspaper articles that the plaintiffs filed with the opposition allege that the plaintiffs' principals "targeted" them "for filing grievances and writing letters regarding children with special needs not receiving mandated services, student-discipline issues, and inadequate learning materials."  (ECF No. 87 at 9.)  The articles do not name Applewhite's principal, but based on the SAC's allegations, the Court presumes it is Beecher.  One article names James as Salahuddin's principal (*see id.* at 9–10), and states that James "requested that Ms. Salahuddin undergo a medical exam at the DOE's downtown Brooklyn headquarters to test her mental-health" because she "prayed in class during instructional time," which she denied, and "failed to monitor the safety of her students, even though [she] said that she had asked for a para-professional for her classroom months earlier, as well as for more mental-health services at the school."  (*Id.* at 10.)  The opposition also alleges that "the Principal changed [Applewhite's] Instructional Assignments three times in December 2018" because, in November 2018, Applewhite "contacted several regulatory agencies . . . and filed a complaint regarding special education services."  (ECF No. 87-1 at 3.)  The change in instructional assignments "subjected [Applewhite] to disparaging treatment and unfair labor practices."  (*Id.*)

These allegations are insufficient to state claims against Beecher and James.

### i.     Title VII, ADA, and Rehabilitation Act Claims

The Title VII, ADA, and Rehabilitation Act claims must be dismissed against Beecher and James (as well as against Carranza, McBryde, and Richards) because these statutes do not provide for individual liability.  *See Cayemittes v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 62 (2d Cir. 2016) ("Title VII does not provide for individual liability."); *Sutherland v.*

*N.Y. State Dep't of Law*, No. 96-CV-6935, 1999 U.S. Dist. LEXIS 7309, at *21 (S.D.N.Y. May 18, 1999) ("Individual defendants may not be held personally liable for alleged violation of the ADA . . . or the Rehabilitation Act." (collecting cases)).[18]

    *ii. First Amendment Retaliation Claims*

  The plaintiffs' First Amendment retaliation claims must also be dismissed against Beecher and James.  A government employee making these claims "must . . . show that (1) her speech was constitutionally protected;" (2) the defendant took an "adverse employment action" against her; and (3) "the speech was a motivating factor in the adverse employment decision." *Felton v. Katonah Lewisboro Sch. Dist.*, No. 08-CV-9340, 2009 U.S. Dist. LEXIS 64660, at *10 (S.D.N.Y. July 24, 2009) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 188–89 (2d Cir. 2008)).

  As noted above, most of the plaintiffs' allegations against Beecher and James are vague and conclusory.  There are only two that include specifics.  Applewhite claims that Beecher "changed [her] Instructional Assignments three times in December 2018" because Applewhite "contacted several regulatory agencies . . . and filed a complaint regarding special education services for students in her class and school" in November 2018.  (ECF No. 87 at 9.)  Salahuddin claims that in "late March,"[19] James "requested that [] Salahuddin undergo a medical exam at the DOE[] . . . to test her mental-health" because she "prayed in class during instructional time," which she denied, and "failed to monitor the safety of her students, even though [she] said that

---

[18] This conclusion applies to the claims against the defendants in their individual and official capacities. *See also Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 163 (E.D.N.Y. 1996) ("[T]here is no distinction made in Title VII or the ADA or Rehabilitation Act for lawsuits brought against other employees in their official capacities, as opposed to lawsuits brought against those employees in their individual capacities. . . . [The plaintiff's] alternative request that his ADA claim survive against [the individual defendant] in his official capacity is denied.").

[19] The pleadings do not include the year, but the Court presumes, from other dates in the articles, that it is 2018.

she had asked for a para-professional for her classroom months earlier, as well as for more mental-health services at the school." (*Id.* at 10.)

Applewhite does not sufficiently allege that Beecher subjected her to an adverse employment action.  The pleadings do not include any facts about how "chang[ing] [Applewhite's] Instructional Assignments three times" in the same month affected her employment at all, let alone adversely.  (*Id.* at 9.)

Salahuddin's claim against James is time-barred.  The statute of limitations for First Amendment claims brought under 42 U.S.C. § 1983 is three years, *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015), and the plaintiffs commenced this action on May 24, 2021, over three years after the allegations against James occurred in "late March" 2018 (ECF No. 87 at 10).

This leaves the plaintiffs' Title VII, ADA, Rehabilitation Act, and First Amendment claims against the DOE, as well as the NYSHRL, NYCHRL, and New York Civil Service Law 75-b claims against the DOE, Beecher, and James.[20]

## IV.    Federal Claims Against the DOE

As an initial matter, "[d]isability is not among the enumerated bases for a Title VII suit, and therefore [the plaintiffs'] claim[s] for disability discrimination," hostile work environment, and retaliation "brought under Title VII cannot survive."  *Fowler v. Hannibal Cent. Sch.*, No. 23-CV-6509, 2023 U.S. Dist. LEXIS 171874, at *9 (W.D.N.Y. Sept. 26, 2023) (quoting *Diep v. Southwark Metal Mtg. Co.*, No. 00-CV-6136, 2001 U.S. Dist. LEXIS 2953, at *8 (E.D. Pa. Mar. 19, 2001)).  Similarly, Salahuddin cannot bring claims for discrimination, hostile work

---

[20] The plaintiffs' eighth "claim for relief" purports to be for religious discrimination under Title VII and "42 U.S.C. Chapter 218."  (ECF No. 70 at 26.)  There is no Chapter 218 of Title 42 of the U.S. Code; to the extent the plaintiffs meant to cite 42 U.S.C. § 218, this provision refers to "National Advisory Councils in Migrant Health" and is not relevant to this action.

environment, or retaliation on the basis of religion under the ADA or the Rehabilitation Act; any claims based on those theories are dismissed.

**A. Discrimination Claims**

The Court construes the pleadings as bringing Title VII, ADA, and Rehabilitation Act discrimination claims on the theories of failure to accommodate the plaintiffs' disabilities, failure to accommodate Salahuddin's religion, failure to promote, and disparate treatment.[21]

*i.      Failure to Accommodate the Plaintiffs' Disabilities*

To plead a discrimination claim "based on an employer's failure to accommodate a disability, under either the ADA or the Rehabilitation Act," the plaintiffs must allege that (1) they are "person[s] with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of [the] disability; (3) with reasonable accommodation, [the] plaintiff[s] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Stanley v. City Univ. of N.Y.*, No. 18-CV-4844, 2023 U.S. Dist. LEXIS 55745, at *59 (S.D.N.Y. Mar. 30, 2023) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019)); *see also Laguerre v. Nat'l Grid USA*, No. 20-3901, 2022 U.S. App. LEXIS 6328, at *2–3 (2d Cir. Mar. 11, 2022).

Applewhite alleges that in September 2021, she "applied for an extended ADA accommodation to work remotely from home following the Covid-19 pandemic;" in November 2021, the defendants denied her request, which subjected her to "an unsafe and unhealthy work environment exposing her to the virus twice." (ECF No. 70 ¶ 26.) In September 2022, she made

---

[21] The plaintiffs each bring disability discrimination claims under Title VII and the ADA (ECF No. 70 ¶¶ 100–05 (fourth claim for relief), ¶¶ 119–26 (seventh claim for relief)); Salahuddin also brings religious discrimination claims under those statutes (*id.* ¶ 94–99 (third claim for relief)). The plaintiffs also bring claims for "disability discrimination for advocating for special needs students" under Title VII, the ADA, and the Rehabilitation Act. (*Id.* ¶¶ 112–18 (sixth claim for relief).)

an additional request to work from home "due to her continued battle with several health challenges," but the defendants denied that request, too.  (*Id.* ¶ 69.)

Applewhite does not allege facts showing that "the requested accommodation—working remotely, indefinitely—would have permitted [her] to 'perform the essential functions of [her] employment.'"  *Stanley*, 2023 U.S. Dist. LEXIS 55745, at *60 (quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)).  She alleges only that she made two requests to work from home and they were denied.  "More is needed to make plausible the allegation that [she] could have performed all [her] essential duties from home."  *Id.* at *61; *compare Smith v. Town of Ramapo*, 745 F. App'x 424, 426 (2d Cir. 2018) (affirming dismissal of failure to accommodate claim where the complaint did not "plead that following [the plaintiff's] injury he could have performed the essential duties of a police officer, either with or without a reasonable accommodation"), *with Coleman v. N.Y.C. Dep't of Health & Mental Hygiene*, No. 20-CV-10503, 2022 U.S. Dist. LEXIS 42016, at *9–10 (S.D.N.Y. Mar. 9, 2022) (upholding claim where the plaintiff "sufficiently ple[d] that he was able to perform essential aspects of his role, for instance performing wellness checks, while working remotely," alleged that he had "successfully worked from home" before, "emphasiz[ed] that the essential functions of the job could be completed from home," and pled that, "at the time he sought an accommodation, there were two vacant positions to which he could have been reassigned").  Accordingly, Applewhite's failure to accommodate claims are dismissed.

As for Salahuddin, she alleges that the defendants were aware of her "physical disability" — "an arthritic knee condition" — and her "mental disability" of "work-related anxiety and PTSD."  (ECF No. 70 ¶¶ 100–01.)  In February 2019, Salahuddin "requested formal ADA accommodation," but "was denied."  (*Id.* ¶ 70.)  Then, in September 2019, she "informally

requested an ADA accommodation . . . after an injury she sustained on school premises [that] exacerbated her physical disability," but the defendants denied the request.  (*Id.*)  Finally, in September 2021, she "was granted medical hardship and access to an elevator, but the [d]efendants failed to fully accommodate her physical disability;" although "[s]he was given a classroom on the fourth floor," she "had to travel from floor to floor escorting her students to her classroom."  (*Id.*)  "As a result, [the] DOE forced [her] to retire early, take pain medication and seek physical therapy immediately."  (*Id.*; *see also id.* ¶ 39 ("After [Salahuddin] received a medical hardship transfer, the [d]efendants forced her to retire early on November 27, 2021 because they didn't fully accommodate her physical disability and denied her cooperative dialogue.").)

These allegations are insufficient to state a failure to accommodate claim.  Although Salahuddin claims that she requested accommodations in February 2019 and September 2019, she does not describe the specific accommodations she requested or claim that her requests were reasonable.  *Stanley*, 2023 U.S. Dist. LEXIS 55745, at \*63 (quoting *McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012)); *Oslzly v. Rosenblatt*, No. 14-CV-3638, 2014 U.S. Dist. LEXIS 115420, at \*16 (E.D.N.Y. Aug. 18, 2014).  Salahuddin acknowledges that the defendants addressed her September 2021 request, but objects that they did not "fully accommodate" her arthritis.  This is not the standard under the ADA or the Rehabilitation Act; these statutes require only a "reasonable accommodation," and Salahuddin does not allege that any additional accommodation existed — such as a classroom on a lower floor or taking her students in the elevator — "pursuant to which [she] could have performed the essential functions of [her] job." *Stanley*, 2023 U.S. Dist. LEXIS 55745, at \*62; *cf., e.g.*, *Miller v. N.Y. State Police*, No. 20-3976, 2022 U.S. App. LEXIS 10354, at \*11–12 (2d Cir. Apr. 18, 2022) (affirming dismissal where the

plaintiff did not establish that accommodation of a light-duty position would enable the plaintiff to perform essential functions of the job, or that such a position was requested or available). Salahuddin's claims for failure to accommodate her disabilities are dismissed.

To the extent the plaintiffs bring failure to accommodate claims on behalf of their students (*see, e.g.*, ECF No. 70 ¶ 37 ("Salahuddin's students were denied ADA regulated age-appropriate lavatory toilet, lavatory seat, and slow release door to be installed."), ¶ 70 ("In September of 2019, [] Salahuddin requested a formal ADA Accommodation-age appropriate bathroom for her 3K class.  Her students were denied.")), they must be dismissed.  The plaintiffs do not have standing to bring claims on behalf of their students because they are "not seeking to remedy any harm to [themselves]."  *Rubin v. N.Y.C. Bd. of Educ.*, No. 20-CV-10208, 2023 U.S. Dist. LEXIS 2832, at *35–36 (S.D.N.Y. Jan. 6, 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021)); *cf., e.g.*, *Loeffler v. Staten Isl. Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) (Wesley, J., concurring) (non-disabled parties bringing associational discrimination claims must prove that they suffered an independent injury); *Worrell v. Cortines*, No. 90-CV-3142, 1995 U.S. Dist. LEXIS 22680, at *21 (E.D.N.Y. Mar. 26, 1995) (a teacher lacked standing to sue for alleged wrongs inflicted on her students despite the teacher experiencing "indirect effects" of such injuries).

### ii.     *Failure to Accommodate Salahuddin's Religion*

A plaintiff bringing a Title VII religious discrimination claim for failure to accommodate must allege that she "(1) has a bona fide religious belief conflicting with an employment requirement; (2) informed her employer of this belief; and (3) was disciplined for failure to comply with the conflicting employment requirement."  *Beickert v. N.Y.C. Dep't of Educ.*, No. 22-CV-5265, 2023 U.S. Dist. LEXIS 170719, at *6 (E.D.N.Y. Sept. 25, 2023) (citing *Baker*

*v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).  If the plaintiff satisfies these requirements,

"the employer must offer [her] a reasonable accommodation, unless doing so would cause the

employer to suffer an undue hardship.'"  *Id.* (quoting *Baker*, 445 F.3d at 546).

Salahuddin alleges that the defendants "fail[ed] to provide religious accommodation" "for

four consecutive years," despite "being aware of her religious observance of Ramadan," by

"giving her excessive workloads," "subject[ing] her to irregular schedule rotating throughout the

school and assigning additional tasks that impacted her Ramadan religious fasting observance."

(ECF No. 70 ¶¶ 35, 71, 128–29; *see also id.* ¶¶ 94, 130–31; ECF No. 87 at 4.)  By "failing to

protect her religious observance, . . . Salahuddin endured hardships while fasting."  (*Id.* ¶ 71.)  In

the opposition, Salahuddin alleges additionally that the defendants did not accommodate her

observance of Shabban.  (ECF No. 87 at 18.)

The defendants agree that Salahuddin "has a bona fide religious belief" and that they

were aware of that belief.  *Beickert*, 2023 U.S. Dist. LEXIS 170719, at *6.  But Salahuddin does

not allege that her observance of Ramadan and Shabban "conflict[ed] with an employment

requirement," *id.*, and does not explain in the complaint how "irregular schedule rotating" and

assignment of "additional tasks" "impacted" her observance or caused her to "endure[] hardships

while fasting" (ECF No. 70 ¶¶ 35, 71).  *See, e.g.*, *Muslim v. Sagamore Children's Psych. Ctr.*,

No. 22-CV-7850, 2024 U.S. Dist. LEXIS 124278, at *14–15 (E.D.N.Y. July 15, 2024) (finding

this element not satisfied by "vague and unsupported statements related to [a plaintiff's] religious

beliefs"); *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) ("Bald

allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an

employment requirement are insufficient to state a claim for religious discrimination under Title

VII." (citations omitted)).

Moreover, Salahuddin does not allege that the DOE was aware that there was any conflict, only that it was aware of her religious observances. *See, e.g.*, *Marte v. Montefiore Med. Ctr.*, No. 22-CV-3491, 2022 U.S. Dist. LEXIS 186884, at *9–10 (S.D.N.Y. Oct. 12, 2022) (finding that the plaintiff did not state a religious accommodation claim where "the employee [did not] make her employer aware that there was a conflict between her religious belief and the employment requirement").  Nor does she allege that she was disciplined in any manner for failing to comply with an employment requirement.  *See Ahmad v. N.Y.C. Health & Hosps. Corp.*, No. 20-CV-675, 2021 U.S. Dist. LEXIS 62986, at *53 (S.D.N.Y. Mar. 31, 2021) ("[A]n individual must have suffered some type of discipline or demotion—or at least the threat of discipline or demotion—in order to establish a prima facie case of religious discrimination pursuant to Title VII." (quoting *Gueye v. Evans*, No. 04-CV-6029, 2006 U.S. Dist. LEXIS 82925, at *17–18 (S.D.N.Y. Nov. 13, 2006), *aff'd sub nom. Gueye v. Gutierrez*, 277 F. App'x 70 (2d Cir. 2008) (summary order))); *see also, e.g.*, *Mines v. City of New York/DHS*, No. 11-CV-7886, 2013 U.S. Dist. LEXIS 157782, at *21 (S.D.N.Y. Nov. 4, 2013) (plaintiff must show that he was "'threatened with discipline' or suffered some 'adverse employment action' for failing to report to work on the days she requested to take off for religious accommodation" (quoting *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 370 (S.D.N.Y. 2008))).

Accordingly, Salahuddin's claim must be dismissed.

### iii.   Failure to Promote

The Court construes the SAC liberally to bring discrimination claims for failure to promote.  (*See* ECF No. 70 ¶ 61 (Applewhite was denied "promotions to administrative positions and positions for teacher leadership roles in the [DOE]"), ¶ 62 (the defendants denied Salahuddin "coaching and adjunct professor positions").)

To state a claim for discriminatory failure to promote, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)).

The plaintiffs do not allege any details about the positions that they claim they were denied.  Thus, they do not allege that the DOE had open positions, that the plaintiffs applied and were qualified for the positions, or that the DOE continued to look for applicants with the plaintiffs' qualifications after they rejected the plaintiffs.  Accordingly, the plaintiffs' discrimination claims are dismissed with respect to DOE's failure to promote them.

iv.     *Other Adverse Actions*

The Court construes the SAC to bring Title VII, ADA, and Rehabilitation Act discrimination claims on the separate theories that the DOE subjected them to various adverse employment actions because of their disabilities, because they advocated for special needs students, and, in Salahuddin's case, because she is Muslim.

The Court analyzes these claims under the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  Under this framework, a plaintiff must first establish a *prima facie* case of discrimination.  Then, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action against the employee." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383, 2024 U.S. Dist. LEXIS 58227, at *15 (S.D.N.Y. Mar. 29, 2024) (quoting *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 86–87 (2d Cir. 2022)).  "If the employer does so, then the burden shifts back to the

employee to show that the employer's articulated reason is pretext for discrimination." *Id.*
(quoting *Truitt*, 52 F.4th at 86–87).

On a motion to dismiss, "the court need only concern itself with the first phase of the
*McDonnell Douglas* framework." *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, 665 F. Supp.
3d 412, 449 (S.D.N.Y. 2023). "'[T]he pleading requirements in discrimination cases are very
lenient, even *de minimis*,' but the allegations in a plaintiff's complaint must give plausible
support to the *prima facie* claim requirements." *Atherley*, 2024 U.S. Dist. LEXIS 58227, at *16
(quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)). A plaintiff alleges a *prima facie*
discrimination case by showing that she (1) "is a member of a protected class;" (2) "was
qualified" for her position; (3) "suffered an adverse employment action;" and (4) "has at least
minimal support for the proposition that the employer was motivated by discriminatory intent."
*Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

The defendants do not contest that the plaintiffs have pled the first two elements of their
Title VII and ADA claims — that each is a member of a protected class and that they applied and
were qualified for jobs for which the employer was seeking applicants. The defendants argue,
however, that the plaintiffs have not alleged sufficiently adverse employment actions or that the
defendants took such actions against them at least in part for a discriminatory reason. (ECF
No. 81-1 at 6–9.) In the opposition, the plaintiffs do not argue that the SAC alleges
discriminatory intent, and while they assert that the SAC alleges adverse employment actions,
they do not say anything more. (*See generally* ECF Nos. 87, 87-1; *see also* ECF No. 87 at 7.)
Therefore, the plaintiffs have waived these arguments, and the claims must be dismissed. *Sealy
v. State Univ. of N.Y. at Stony Brook*, 408 F. Supp. 3d 218, 225 (E.D.N.Y. 2019) (even where a
plaintiff proceeds *pro se*, "[a] court may, and generally will, deem a claim abandoned when a

plaintiff fails to respond to a defendant's arguments that the claim should be dismissed" (quoting *McNair v. Ponte*, No. 16-CV-1722, 2019 U.S. Dist. LEXIS 54287, at *54–55 (S.D.N.Y. Mar. 29, 2019))). Even if the plaintiffs had responded to these arguments, however, the claims would still fail.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Stewart v. City of New York*, No. 22-2775, 2023 U.S. App. LEXIS 28048, at *3 (2d Cir. Oct. 23, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). "Quintessential examples of materially adverse employment actions include termination . . . , a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Sealy v. State Univ. of N.Y. at Stony Brook*, 408 F. Supp. 3d 218, 226 (E.D.N.Y. 2019) (citing *Vega*, 801 F.3d at 85). By contrast, "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." *Id.*

As noted above, most of the SAC's allegations that assert purported adverse employment actions are vague and conclusory (*see, e.g.*, ECF No. 70 ¶¶ 28, 34, 38, 65, 67, 94, 121; ECF No. 87-1 at 3–4), or discuss such actions only in the context of the retaliation claims.[22] Even with the most liberal reading of the SAC, the other, slightly more specific allegations do not allege adverse actions.[23] Salahuddin's allegations that the DOE gave her an "irregular schedule

---

[22] This is true even though the plaintiffs label the allegations with the word "discrimination." (*See, e.g.*, ECF No. 70 ¶¶ 61, 62; ECF No. 87-1 at 2–3.)

[23] On its face, the allegation that Salahuddin was "forced to retire early because the [d]efendants didn't fully accommodate her physical disability . . . ." (ECF No. 70 ¶ 39) could plausibly be construed to be an adverse employment action. But, as discussed above, the SAC alleges that the DOE gave her a reasonable accommodation and Salahuddin does not allege that she could "perform the essential functions of the job" with an additional "reasonable accommodation" that the DOE denied. *Cf. Kirkland-Hudson*, 665 F. Supp. 3d at 457; *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 328 (2d

rotating throughout the school," assigned "additional tasks that impacted her Ramadan religious fasting observance," and "assigned [her] more difficult duties and demanded increased production" despite knowing that she was physically disabled (ECF No. 70 ¶¶ 35, 97, 102, 128, 130) do not qualify.  "[E]xcessive work" is not an adverse action unless Salahuddin alleged that her workload was "heavier than similarly situated employees," *Kirkland-Hudson*, 665 F. Supp. 3d at 451–52, which she did not do; nor does she explain how receiving an irregular schedule adversely affected her employment.

To the extent the plaintiffs allege that the DOE's failure to provide reasonable disability or religious accommodations is an adverse employment action (*see* ECF No. 70 ¶¶ 26, 70, 94, 100, 128), that argument also fails.  "[T]he denial of a reasonable accommodation satisfies the *causation* element [of a discrimination claim] where the failure to accommodate results in an adverse employment action."  *Kirkland-Hudson*, 665 F. Supp. 3d at 457 (collecting cases).

Salahuddin may also be alleging that directing her to have a medical examination was an adverse employment action for purposes of her discrimination claims.  (ECF No. 70 ¶ 62; ECF No. 87-1 at 4, 10, 13.)  However, "sending [her] to undergo a medical examination, even if inappropriate under the circumstances, does not constitute an adverse employment action unless accompanied by a material change in the 'terms and conditions' of [her] employment." *Kirkland-Hudson*, 665 F. Supp. 3d at 458 (quoting *Hoeffner v. Cnty. of Orange*, No. 17-CV-9344, 2020 U.S. Dist. LEXIS 41347, at *17 (S.D.N.Y. Mar. 10, 2020); *cf., e.g.*, *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014) (finding that the plaintiff's "one-

---

Cir. 2000) ("Terminating a disabled employee . . . who can perform the essential functions of the job but cannot return to work because the employer has denied his request for reasonable accommodation[] is disability discrimination under the ADA.").  In other words, the ADA does not require "full accommodation," so Salahuddin's claim cannot proceed on that theory.

time referral to an involuntary medical examination is not grounds for a claim of age discrimination").

To the extent Applewhite alleges that the DOE's denial of her requests to work remotely is an adverse employment action for purposes of her disability discrimination claim, this could possibly satisfy this element of a discrimination claim. "Prior to the COVID-19 pandemic, courts in the Second Circuit generally found that denying an employee's request to work remotely was not an adverse employment action." *Gayles v. Roswell Park Cancer Inst. Corp.*, No. 22-CV-750, 2023 U.S. Dist. LEXIS 174496, at *14 (W.D.N.Y. Sept. 28, 2023). However, district courts are divided on whether such denials may constitute adverse employment actions when they occurred during the COVID-19 pandemic. *Id.* at *14 nn.4–5 (collecting cases). Even if the denials are adverse employment actions, the SAC does not sufficiently allege that Applewhite's requests to work remotely were denied because of her disability — or that any of the other insufficiently adverse employment actions occurred under circumstances giving rise to an inference of discrimination.

To show that a defendant discriminated against the plaintiffs because of the protected characteristic at issue, they must allege that the DOE "took adverse action against [them] at least in part for a discriminatory reason, and [they] may do so by [either] alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87 (citing *Littlejohn*, 795 F.3d at 311). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; [the employer's] invidious comments about others in the employee's protected group; . . . the more favorable treatment of employees not in the protected group; or the sequence of events leading to

the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Nothing in the SAC allows for a reasonable inference — based on either direct or indirect evidence — that the plaintiffs' disabilities or Salahuddin's religion were motivating factors for the DOE's alleged conduct. *See Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (summary order) (affirming dismissal where the plaintiff made "bare allegations" that she was mistreated because of her race but "allege[d] no facts to show that [the defendants' actions] were driven by discriminatory animus"). For example, the plaintiffs do not allege that the defendants made any comments about the plaintiffs' disabilities or Salahuddin's religion that would suggest that either played a role in any alleged denial. *See, e.g., Greene v. Brentwood Union Free Sch. Dist.*, 966 F. Supp. 2d 131, 140 (E.D.N.Y. 2013) (granting summary judgment where, among other bases, the comments were not probative of the defendants' motive for taking action against plaintiff and were "remote and oblique" in relation to the adverse employment action (quoting *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Nor did the plaintiffs allege that the DOE permitted similarly situated employees who are not disabled or Muslim to work remotely. *See Littlejohn*, 795 F.3d at 312 ("[A]dverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination.").[24]

---

[24] The SAC also alleges that the defendants subjected Salahuddin to "unauthorized disclosure of her protected health information," "improper requests for fitness to duty," "interference with her right to request FMLA leave," and "denial of reinstatement to her position," that they "blocked" the plaintiffs' "per session pay" and "froze[ their] salar[ies]," "damage[d their] professional reputation[s]," and that they gave Applewhite an "ineffective rating" for the 2017-2018 school year. (*See, e.g.*, ECF No. 70 ¶¶ 61, 100, 104.) However, the SAC discusses this conduct only in the context of their retaliation claims, and the Court does not consider the allegations in relation to the discrimination claims.

Finally, the plaintiffs do not have standing to bring disability discrimination claims "for advocating for the needs of their special education students and," in Salahuddin's case, "students with challenging behaviors."  (ECF No. 70 ¶ 113; *see id.* ¶¶ 112–18.)  The plaintiffs do not allege that they suffered an "independent injury" because of the alleged wrongs inflicted on their students; rather, they allege injuries only to the students themselves.  (*Id.* ¶ 115 ("[t]he [d]efendants knowingly denied students with special needs mandated services"), ¶ 116 (the defendants "fail[ed] to provide a free affordable education for special needs and challenged behavior students").)  *See Rubin*, 2023 U.S. Dist. LEXIS 2832, at *35–36 (citing *TransUnion LLC*, 594 U.S. at 427, and *Loeffler*, 582 F.3d at 279 (Wesley, J., concurring)).  Accordingly, the claims must be dismissed.  *See id.* at *36 ("[A]ny claims based on injuries to people other than [the p]laintiff[s] should be dismissed for lack of standing.").

### B.   Hostile Work Environment Claims

Salahuddin brings Title VII and ADA claims on the ground that the defendants subjected her to a hostile work environment because of her religion and disabilities.  (ECF No. 70 at 19–23.)

To establish a Title VII or ADA hostile work environment claim, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (adopting the Title VII hostile work environment test for ADA claims).  The plaintiff must show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working

environment." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).  She must also allege that "she was subjected to the hostility because of her membership in a protected class." *Tillery v. N.Y. State Off. of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 27 (2d Cir. 2018) (quoting *Brennan v. Metro Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).

Even assuming that there was a hostile work environment, Salahuddin has not pleaded facts demonstrating that the work environment was hostile because of her religion or disabilities. She alleges that the DOE "made her [work as] a substitute teacher, gave her two unsatisfactory overall ratings, blocked per session pay and teacher training rate" "for five years," "froze her salary, denied ADA accommodations [which] exacerbated her physical disability, [and] isolated her." (*Id.* ¶ 62.)  The DOE also "denied her access to pertinent school-wide emails, blocked her from attending mandated professional development [trainings] during COVID-19, assigned her to roach and rat infested classrooms, . . . issued disciplinary letters against her, arranged for ineffective observations about her, denied her school resources, publicly humiliated [her], screamed at [her], stalked [her], [denied] [her] religious accommodation, . . . and denied her coaching and adjunct professor positions." (*Id.*)  However, Salahuddin does not allege that the DOE's conduct was motivated by her religion or disability status; indeed, the SAC repeatedly suggests that the DOE engaged in this conduct as retaliation for her "numerous grievances and complaints with several regulatory agencies." (*Id.* ¶ 66.)  Retaliatory animus is distinct from discriminatory intent and does not satisfy the hostile work environment standard.

Accordingly, these claims must be dismissed.  *See, e.g.*, *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("It is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of

discrimination."); *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 498 (E.D.N.Y. 2019)

(dismissing claims because the plaintiff did not allege that a hostile work environment was

created and existed because of her protected status); *De La Peña v. Metro. Life Ins. Co.*, 953 F.

Supp. 2d 393, 418 (E.D.N.Y. 2013) (same).

### C.      Retaliation Claims

#### i.      *First Amendment Claims*

The plaintiffs bring First Amendment retaliation claims, alleging that the DOE retaliated

against them "for exercising their freedom of speech as citizens with regard to matters of public

concern."  (ECF No. 70 ¶ 76; *see also id.* ¶¶ 75, 77–83.)  The Court assumes that the plaintiffs

are asserting as protected speech the grievances that they filed from 2017 to 2022 (*id.* ¶¶ 61–62)

with "several regulatory agencies, local politicians, and school based administrators" (*id.*) about

"children with special needs not receiving mandated services, student-discipline issues and

inadequate learning materials" (ECF No. 87 at 9; *see also* ECF No. 70 ¶ 61 (Applewhite's

complaints "request[ed] that someone with authority intervene on her behalf to stop the constant

bullying, intimidation and harassment."), ¶ 62 (Salahuddin "complained to several regulatory

agencies about special education violations, staffing for her JCT class formation, lack of

supplies, mandated resources, unfair labor practices, anti-bullying curriculum and

mental/behavioral health services for the school.").)

As discussed above, to state a First Amendment retaliation claim, "a government

employee must . . . show that (1) her speech was constitutionally protected;" (2) the defendant

took an "adverse employment action" against her; and (3) "the speech was a motivating factor in

the adverse employment decision."  *Felton*, 2009 U.S. Dist. LEXIS 64660, at *10 (citing

*Ruotolo*, 514 F.3d at 188–89).  The speech is "constitutionally protected if the employee 'spoke

as a citizen on a matter of public concern.'" *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "[W]hen public employees make statements pursuant to their official duties, [they] are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421, 424–25.

The defendants argue that the plaintiffs' speech was not constitutionally protected. (ECF No. 81-1 at 31.) The plaintiffs respond only with the conclusory statement that the SAC "does allege a protected activity in support of the First Amendment retaliation claim . . . ." (ECF No. 87 at 7.) Accordingly, the plaintiffs have waived the argument, and the claims must be dismissed. *Tojek v. Swift*, No. 20-CV-755Si, 2021 U.S. Dist. LEXIS 90039, at *17 (W.D.N.Y. May 10, 2021) (considering the *pro se* plaintiff's claim abandoned where the plaintiff did not address the defendant's argument in her opposition (citing *In re Kingate Mgmt. Ltd. Litig.*, 746 F. App'x 40, 43 (2d Cir. 2018)); *Syncx LLC v. Kimedics, Inc.*, No. 23-CV-5070, 2023 U.S. Dist. LEXIS 139369, at *45 (S.D.N.Y. Aug. 10, 2023) (finding argument waived where it was raised only in a "single conclusory sentence" and was not "fully developed" (citations omitted)).

In any case, the plaintiffs do not state First Amendment retaliation claims because they have not plausibly alleged a causal connection between their speech and any later adverse actions. "To plausibly plead causation, [the plaintiffs] must allege facts suggesting that [their] 'protected activity was a substantial motivating factor in the adverse employment action.'" *Callahan v. Hum. Res.*, No. 20-CV-1881, 2022 U.S. Dist. LEXIS 27189, at *5 (D. Conn. Feb. 14, 2022) (quoting *Specht v. City of New York*, 15 F.4th 594, 605 (2d Cir. 2021)). They "can meet [their] burden by alleging either direct evidence of retaliation, or indirect evidence that 'the adverse employment decision and the protected activity were close in time.'" *Id.* (quoting *Specht*, 15 F.4th at 605).

For the most part, the pleadings do neither. The plaintiffs allege no direct evidence of a retaliatory motive, "such as comments by a [DOE] official," suggesting that the DOE bullied them, denied them access to curriculum materials, gave them unsatisfactory or ineffective ratings, or subjected them to any of the other allegedly adverse actions "because of [their] complaints" about the DOE. *Id.* Nor have the plaintiffs plausibly alleged causation based on timing for most of their alleged protected speech. With a few exceptions, the pleadings do not allege *when* the plaintiffs engaged in constitutionally protected speech; for the most part, they allege years-long date ranges, which makes it impossible for the Court to determine whether the plaintiffs' speech was sufficiently close in time to the alleged adverse employment decisions. Therefore, the Court cannot infer causation. (*See, e.g.*, ECF No. 70 ¶ 61 (Applewhite complained to various school district and local government entities "[f]rom September 2017 until June 2022"), ¶ 62 (Salahuddin did the same "[f]rom December 2017 to June 2021).) *See Belyea v. City of Glen Cove*, No. 20-CV-5675, 2022 U.S. Dist. LEXIS 150246, at *73 (E.D.N.Y. Aug. 22, 2022) (although "[t]here is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," "a plaintiff cannot solely rely on conclusory assertions of retaliatory motive to satisfy the causal link" (citations omitted)); *cf. Clark v. Dominique*, 798 F. Supp. 2d 390, 403 & n.26 (N.D.N.Y. 2010) (dismissing retaliation claims where the plaintiff alleged she was terminated because she reported her employer's illegal acts but where she allegedly only "vague factual predicates and conclusory labels" and failed to provide "any meaningful detail").

The few allegations that include dates, and that allege speech within a month or two of an employment action, are insufficient in other respects. Specifically, the opposition alleges that in November 2018, Applewhite "contacted several regulatory agencies (UFT, NYSED, SCI) and

filed a complaint regarding special education services for students in her class and school," and

that a month later, in December 2018, her principal changed her "Instructional Assignments

three times" and she "was given a new group of students."  (ECF No. 87-1 at 11, 17.)  As

discussed above regarding First Amendment retaliation claims against Beecher, the pleadings do

not sufficiently allege that these were "adverse employment actions."  *Clark*, 798 F. Supp. 2d at

403.  The opposition's allegations about Salahuddin's speech on January 17, 2018, February 2,

2018, and May 17, 2018 are also insufficient to state a claim because of the three-year statute of

limitations applicable to First Amendment claims.  *Smith*, 782 F.3d at 100.

Finally, to the extent the plaintiffs contend that their EEOC charges and notices of claim

constitute speech protected by the First Amendment, their argument fails.  (*See, e.g.*, ECF No. 70

¶¶ 47, 49, 53–55, 57.)  These charges involved "personal grievances relating to [their] own

employment interests," "limited to instances affecting only [themselves]," not general

discriminatory practices "in a government workplace;" therefore, they are not protected speech.

*Cf. Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) (citation

omitted); *see also Belyea*, 2022 U.S. Dist. LEXIS 150246, at *64 ("speech on a purely private

matter, such as an employee's dissatisfaction with the conditions of [her] employment," "does

not pertain to a matter of public concern" (quoting *Sousa v. Roque*, 578 F.3d 164, 174 (2d Cir.

2009)); *id.* at *64–65 (collecting cases).

*ii.     Title VII, ADA, and Rehabilitation Act Claims*

Both plaintiffs bring retaliation claims under Title VII, the ADA, and the Rehabilitation

Act.  (ECF No. 70 ¶¶ 94–105, 119–26.)  The defendants maintain that the plaintiffs' claims

should be dismissed because they have not pled a causal relationship between any purported

protected activity and adverse employment action.  (ECF No. 81-1 at 35–37.)  As with the First

Amendment retaliation claims, the plaintiffs respond only with a conclusory statement that the SAC "does allege causal connections between protected activity and retaliatory acts." (ECF No. 87 at 7.) The plaintiffs therefore have waived the argument, and the claims must be dismissed. *Tojek*, 2021 U.S. Dist. LEXIS 90039, at *17; *Syncx LLC*, 2023 U.S. Dist. LEXIS 139369, at *45.

In any event, the SAC does not sufficiently allege retaliation claims. To state a retaliation claim under all three statutes, the plaintiffs must allege facts that show "(1) participation in a protected activity; (2) that the [DOE] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010)). "Protected activity" for purposes of a retaliation claim is "action taken to protest or oppose statutorily prohibited discrimination." *Natofsky*, 921 F.3d at 354 (quoting *Cruz*, 202 F.3d at 566). An "adverse employment action" is "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination," *Vega*, 801 F.3d at 90; it "need not affect the terms and conditions of a plaintiff's employment," *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010). "The court may infer a causal link where the adverse employment action occurred in a sufficiently close period of time that an inference of discrimination would be reasonable." *Shields v. N.Y.C. Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 165 (E.D.N.Y. Mar. 30, 2020) (citing *Vega*, 801 F.3d at 90).

"[A]t the pleading stage" for a retaliation claim, "a plaintiff must only meet the standard set forth in [Federal Rule of Civil Procedure] 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71–72 (2d Cir. 2006) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)). Under this standard, "[g]iven the Federal Rules' simplified standard for pleading, [a] court may

dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* at 72 (citing *Swierkiewicz*, 534 U.S. at 512). The plaintiffs' allegations fall short even of this minimal requirement.

Applewhite does not allege any adverse employment actions with sufficient particularity for the Court to determine their temporal proximity to any protected speech,[25] aside from the December 2018 reassignments and the DOE's November 2021 and September 2022 denials of her remote work requests. As with the First Amendment retaliation claims, she does not allege that the December 2018 changes to her "Instructional Assignments" and assignment of a new group of students are actions that could dissuade a reasonable worker from reporting discrimination. (ECF No. 87-1 at 11, 17.) The Court cannot determine from the pleadings what these changes entailed and how significantly they altered Applewhite's terms and conditions of employment; moreover, Applewhite does not allege that these changes were imposed only on her. (*See* ECF No. 87 at 11 (the plaintiffs "believed the mistreatment they experienced was far too common across city schools," albeit "particularly among [t]eachers who spoke out about contract violations and education laws not being followed").) *Cf. Massaro v. Bd. of Educ.*, 774 F. App'x 18, 22 (2d Cir. 2019); *see also Richards v. Dep't of Educ. of N.Y.*, No. 21-CV-338, 2022 U.S. Dist. LEXIS 19674, at *49 (S.D.N.Y. Feb. 2, 2022) (although an "adverse employment action" for purposes of a retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination," "'normally petty slights, minor

---

[25] Applewhite alleges the following protected activity (though with little factual detail): a 2019 EEOC charge, an August 4, 2022 EEOC charge, a February 28, 2022 notice of claim, and a July 2022 notice of claim. (ECF No. 70 ¶¶ 44, 47, 49.) Salahuddin alleges, also without specifics, an August 2018 EEOC charge, a 2019 EEOC charge, a 2020 New York State Division of Human Rights charge, a November 2021 EEOC charge, a February 28, 2022 notice of claim, and a July 2022 notice of claim. (*Id.* ¶¶ 51, 53–57.) "Receipt of a right-to-sue letter . . . does not constitute a protected activity as a matter of law." *Shields v. N.Y.C. Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 165 n.5 (E.D.N.Y. 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

annoyances, and simple lack of good manners' will not deter employees from complaining about discriminatory behavior" (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006))); *cf. Clark*, 798 F. Supp. 2d at 403.  Additionally, the December 2018 conduct predated all of Applewhite's protected activity (*see supra* note 25); the DOE therefore could not have acted in retaliation for later-occurring activity.  *Wang v. Palmisano*, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016) ("[T]he requisite causal connection will falter if the employer's complained-of conduct began before the employee's corresponding protected activity." (collecting cases)).

The November 2021 denial occurred, at minimum, over 22 months after she filed an EEOC charge in 2019, which is too remote to allow the Court to infer a causal link.  *Shields*, 489 F. Supp. 3d at 165 ("Courts in this circuit have consistently found, as the Court does here, that a period of greater than three months is too attenuated to provide a basis to infer retaliation."); *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (stating that the Supreme Court has ruled that the alleged protected activity and retaliation must occur "'very close' in time," and finding that eleven months between the plaintiff's protected activity and the alleged retaliation was too remote (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001))); *Moore v. Verizon*, No. 13-CV-6467, 2016 U.S. Dist. LEXIS 16201, at *43–44 (S.D.N.Y. Feb. 5, 2016) (collecting cases).

Finally, although the September 2022 denial occurred a month after she filed an EEOC charge and two months after she filed a notice of claim, the DOE had denied the same request a year earlier, which undermines an inference of causation.  *Wang*, 157 F. Supp. 3d at 327.

Salahuddin alleges the dates of only a few employment actions.  Some predate all of her protected activity and therefore cannot have been retaliatory.  (*Compare* ECF No. 87-1 at 17 (alleging employment actions on January 31, 2018, April 11, 2018, and the week of May 17,

2018), *with* ECF No. 70 ¶ 51 (Salahuddin first filed an EEOC charge "against the defendants for religious discrimination and retaliation" in August 2018).)[26]

Salahuddin also alleges that in February 2019 and September 2019, she requested accommodations for her arthritis.  (ECF No. 70 ¶ 70.)  She alleges that the defendants denied her requests, but not when they denied them, which means that the Court cannot infer a sufficiently close temporal proximity to the 2019 EEOC charge.  *See Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 154 (E.D.N.Y. 2015) ("Simply pleading that an adverse action occurred later in time than [the] plaintiff's protected activity is insufficient to survive a motion to dismiss." (citations omitted)).

Salahuddin alleges that she was forced to retire on November 27, 2021, the same month that she filed another EEOC charge.  (ECF No. 70 ¶ 74.)  However, she also alleges that the DOE gave her some accommodations — "grant[ing her] medical hardship" (*Id.* ¶ 70) and transferring her to "a new school with an elevator" (*id.* ¶ 74) — and that the DOE had "failed to fully accommodate" her for years before she decided to retire (*id.* ¶ 100).  *See Wang*, 157 F. Supp. 3d at 327.  Thus, Salahuddin does not sufficiently allege a causal connection between the conduct allege and her decision to retire.

Salahuddin alleges that in November and December 2021, after she retired, the defendants "refus[ed] to complete" certain forms, which "held up her terminal pay money." (ECF No. 70 ¶ 63.)  Although this conduct occurred close in time to her November 2021 EEOC charge, it does not support a Title VII or ADA claim because "[a] mere delay in receiving a

---

[26] Although Salahuddin alleges that she made complaints and "exhausted all internal remedies" "[f]rom 2017-2021" (ECF No. 70 ¶ 50), it is not clear what comprised the complaints that predated these adverse employment actions.  In other words, she does not allege sufficient facts to support an inference that such complaints "protest[ed] or oppose[d] statutorily prohibited discrimination," *Natofsky*, 921 F.3d at 354 (quoting *Cruz*, 202 F.3d at 566), or raised other issues with her school or school district.

paycheck is not an adverse employment action sufficient to state a claim of retaliation." *Jones v. N.Y.C. Bd. of Educ.*, No. 09-CV-4815, 2012 U.S. Dist. LEXIS 47128, at *37 (S.D.N.Y. Apr. 2, 2012); *see also Burns v. Rovella*, No. 19-CV-553, 2020 U.S. Dist. LEXIS 261539, at *15 (D. Conn. Feb. 21, 2020) (finding that an eight-week delay in payment was unlikely to dissuade a reasonable worker from exercising her rights).

Finally, Salahuddin alleges that in April and May 2023, the defendants "continued to engage in post-retirement retaliation by damaging [her] reputation with former colleagues" (ECF No. 70 ¶ 64), but provides no further detail.  Her claims therefore cannot proceed on this alleged conduct.  *Clark*, 798 F. Supp. 2d at 403 (dismissing retaliation claim where the allegations "simply consist[ed] of vague factual predicates and conclusory labels," "without any meaningful detail").

Accordingly, the plaintiffs' retaliation claims under Title VII, the ADA, and the Rehabilitation Act are dismissed.

## V.  State Law Claims

The Court declines to retain jurisdiction over the plaintiffs' state law claims, given that all the federal claims have been dismissed.  Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"  *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)).

The plaintiffs "did not address supplemental jurisdiction in [their] briefing, let alone provide a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed." *Leake v. Garden City Union Free Sch. Dist. Bd. of Educ.*, No. 23-CV-4243, 2024 U.S. Dist. LEXIS 115773, at *13–14 (E.D.N.Y. July 1, 2024). Accordingly, the Court declines to exercise supplemental jurisdiction over the plaintiffs' NYSHRL, NYCHRL, and New York Civil Service Law 75-b claims.

## VI.   Leave to Amend

The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022), especially for *pro se* plaintiffs, *Zaerpour v. Bank of Am. Corp.*, No. 23-845, 2024 U.S. App. LEXIS 11312, at *7 (2d Cir. 2024). However, the Court declines to grant the plaintiffs leave to amend. *See, e.g.*, *Noto*, 35 F.4th at 107 (affirming denial of leave to amend); *Zaerpour*, 2024 U.S. App. LEXIS 11312, at *7 (same). "A court should freely give leave [to amend] when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021) (affirming denial of leave to amend).

The plaintiffs brought this action on May 24, 2021. (ECF No. 1.) They first amended their complaint on August 5, 2022 (ECF No. 22), when they were represented by counsel, and again on October 16, 2023 (ECF No. 70). The plaintiffs also included new allegations in their opposition papers. (*See* ECF Nos. 87, 87-1.) The plaintiffs now ask the Court for leave to amend a third time, "based on new facts uncovered from the outstanding discovery documents." (ECF No. 87-1 at 7.) They state that they "have provided the [C]ourt with a draft of a sufficient

complaint that asserts [their] claims" (*id.*), but it is not clear what filing constitutes the proposed third amended complaint.

The plaintiffs "provide[] no explanation" beyond those vague statements of "how [they] intend to amend further" the SAC "to provide additional facts not already set forth" in their opposition filings. *Pierre v. N.Y.C. Fire Dep't*, No. 22-CV-7425, 2024 U.S. Dist. LEXIS 17160, at *11 (E.D.N.Y. Jan. 31, 2024). This is sufficient reason to deny leave to amend. *Id.* at *11–12.

In any event, because the Court considered the allegations raised in the opposition papers as if they were included in the SAC, the plaintiffs "ha[ve] effectively been given a [third] opportunity to amend." *Id.* at *12 (citing *McKeever v. Singas*, No. 17-CV-4996, 2022 U.S. Dist. LEXIS 106847, at *45–46 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying the plaintiff leave to file a third amended complaint), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 161490 (E.D.N.Y. Sept. 7, 2022)); *see also Khalil v. Pratt Inst.*, 818 F. App'x 115 (2d Cir. 2020) (affirming dismissal with prejudice because district court already granted *pro se* plaintiff three opportunities to amend). This is two more opportunities than the Second Circuit ordinarily requires, including one when the plaintiffs were represented by counsel. *Cf. Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 596 (S.D.N.Y. 2013) (The plaintiffs "have twice already been granted leave to amend their complaint. Even pro se litigants are generally not entitled to further amendment." (citations omitted)); *Zaerpour*, 2024 U.S. App. LEXIS 11312, at *7. The Court declines to grant an additional opportunity to amend.

**CONCLUSION**

For these reasons, the defendants' motion to dismiss the second amended complaint is granted. The plaintiffs' state law claims and federal discrimination claims based on (i) failure to accommodate their students' disabilities and (ii) their advocacy for their students are dismissed without prejudice; the remaining claims are dismissed with prejudice. The plaintiffs' request for leave to amend the complaint is denied.

The Clerk of Court is directed to mail a copy of this Order to the *pro se* plaintiff and to close this action. In addition, by August 15, 2024, the defendants are directed to send via mail to the plaintiffs' last known mailing addresses copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009), and to submit to the Court at that time proof of service.

Although the plaintiffs have paid the filing fee, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, in forma pauperis status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        August 8, 2024